Connie Ray EVANS, Petitioner,

v.

Morris THIGPEN, Commissioner, Mississippi Department of Corrections, Respondents.

Civ. A. No. J84–0090(B).

United States District Court, S.D. Mississippi, Jackson Division.

March 21, 1986.

---

Shirley Payne and Isaac Byrd, Jackson, Miss., and Steven L. Winter, New York City, for petitioner.

Marvin L. White, Asst. Atty. Gen., Jackson, Miss., and William S. Boyd, III, Sp. Counsel, Gulfport, Miss., for respondents.

## MEMORANDUM OPINION
## AND ORDER

BARBOUR, District Judge.

### I.  INTRODUCTION

This habeas corpus death penalty case is presently before the Court for review of a Report and Recommendation issued by the United States Magistrate.  Having con-

ducted a *de novo* review of the pleadings, briefs, and state court evidentiary record in this matter, the Court agrees with the Magistrate's ultimate recommendation that the Petition for habeas relief should be denied. However, we deny the writ, and uphold the imposition of the death penalty, only for the reasons set forth in this opinion.

Having been indicted for the April 1981 murder "with malice aforethought" of Arun Pahwa while engaged in the crime of robbery in violation of *Miss. Code Ann.* § 97–3–19(2)(e), the Petitioner, Connie Ray Evans, pled guilty to the capital offense and proceeded directly to the penalty phase of Mississippi's bifurcated scheme. [R.2, 68–75]. After the sentencing hearing, the jury found that the state had proved four statutory aggravating circumstances, that the aggravating circumstances outweighed any mitigating circumstances, and that the death penalty should be imposed. On direct appeal, the Mississippi Supreme Court upheld the sentence of death. *Evans v. State*, 422 So.2d 737 (Miss.1982), *cert. denied*, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 314 (1983). After an unsuccessful request for hearing, Petitioner then filed an application for error coram nobis relief, which was denied by the Mississippi Supreme Court. *Evans v. State*, 441 So.2d 520 (Miss.1983), *cert. denied*, 467 U.S. 1264, 104 S.Ct. 3558, 82 L.Ed.2d 860 (1984). On February 8, 1984, the instant 63-page Petition for federal habeas relief was filed in this Court, and on February 10, an order staying the execution was entered. The matter was referred to the United States Magistrate, who issued his Report and Recommendation on March 13, 1985. Objections to that report were duly filed by Petitioner.

The underlying facts concerning this capital offense are succinctly stated by the Mississippi Supreme Court in its opinion on direct appeal, 422 So.2d at 739, and will only be briefly summarized here. On April 7, 1981, Petitioner Evans and an accomplice, Alfonso Artis, met and planned an armed robbery of a neighborhood grocery in Jackson, Mississippi. It was contemplated that lethal force might have to be employed during the course of the robbery. The next day, April 8, Evans and Artis put the plan into action. Artis went into the grocery with a .38 caliber revolver while Evans initially acted as a look-out. Artis made the store clerk, Arun Pahwa, get on his knees behind the counter. Evans then entered, received the handgun from Artis, and stood over Pahwa with the cocked revolver pointed at the victim's head. When Artis could not get the cash register drawer open, Pahwa was made to get up and open the register. He was then forced to a kneeling position. Artis then collected an approximate total of $140.00 from the cash register and from Pahwa's pockets and wallet. As Artis turned to leave, Evans shot the kneeling Pahwa in the head from a distance of approximately 3 or 4 feet. [R. 398–400]. The Petitioner and Artis then left the scene of the crime together, and proceeded that day to spend most of the money they had obtained in the robbery on new clothes and personal entertainment.

Artis was apprehended by police later the same day. Petitioner Evans turned himself in to police some two and a half weeks later and gave a confession. In his confession, Petitioner stated that he shot Pahwa because he did not want to be identified.[1] According to Artis' testimony at the hearing, Evans told him that he shot Pahwa because "I was cold hearted."

The central evidence and argument offered by Petitioner at the sentencing hearing in mitigation of the death penalty and in favor of life imprisonment was that he was remorseful for his crime, that he had confessed and turned himself in, and that he should be afforded mercy and forgive-

---

1. At the sentencing hearing, Petitioner recanted this portion of his confession. Instead, according to Petitioner's testimony, he did not intend to shoot Pahwa but the gun was fired because of his nervousness and because Pahwa made a slight movement on his knees when a phone rang. [R. 329, 394–95, 402–403]. By virtue of its finding that Petitioner shot the victim for the purpose of avoiding arrest, the jury did not credit this recantation.

ness. The State, in addition to its evidentiary showing regarding the existence of statutory aggravating circumstances, vigorously sought to discredit the factual basis for Petitioner's claim of remorse. The jury found that the State had proved four statutory aggravating circumstances under the following sub-sections of *Miss. Code Ann.* § 99–19–101: 5(a), that the capital offense was committed by a person "under sentence of imprisonment"; 5(d), that the capital offense was committed while the defendant was engaged in committing a robbery; 5(e) that the capital offense was committed "for the purpose of avoiding or preventing a lawful arrest"; and 5(h), that the capital offense was "especially heinous, atrocious and cruel" [sic]. As noted above, the jury further determined that these aggravating circumstances outweighed any mitigating circumstances and imposed a sentence of death.

The Petition before the Court alleges the following state court errors or omissions, all said to be in violation of the Eighth and Fourteenth Amendments: (1) a prospective juror was excluded in violation of *Witherspoon;* (2) the "heinous, atrocious or cruel" aggravating circumstance was misapplied; (3) the death penalty was imposed on the basis of passion and prejudice because of erroneous evidentiary rulings and improper prosecutorial argument; (4) the refusal of an instruction regarding "mercy"; (5) the exclusion of the testimony of a minister regarding Christian ethics; (6) the lack of a finding of an intent to take life; (7) the use of felony-murder as an aggravating circumstance; (8) the misapplication of the "arrest-avoidance" aggravating circumstance; (9) the misapplication of the "under sentence of imprisonment" aggravating circumstance; (10) the absence of prior notice of the aggravating circumstances on which the state would rely; (11) the lack of a presentence report; (12) an inadequate post-sentence report by the trial judge; (13) that the Mississippi death penalty scheme is arbitrarily applied; and (14) that the death penalty is discriminatorily applied against males, the poor, and blacks accused of killing whites.

■ As is our duty in death penalty cases, we have carefully reviewed the record for error in connection with these claims. *See Johnson v. Thigpen,* 623 F.Supp. 1121, 1127 (S.D.Miss.1985). Our review does not encompass mere errors of state law, but instead focuses on colorable errors of constitutional dimension which may have rendered the sentencing proceeding fundamentally unfair and made the imposition of death as a penalty inappropriate. *Kirkpatrick v. Blackburn,* 777 F.2d 272, 278–80 (5th Cir.1985); *Mattheson v. King,* 751 F.2d 1432, 1435 (5th Cir.1985); *Zant v. Stephens,* 462 U.S. 862, 883–84, 103 S.Ct. 2733, 2746–47, 77 L.Ed.2d 235, 254–55 (1983). As this Court noted in *Johnson,* the procedural posture of some claims may serve as a limitation on habeas review. Here, as in *Johnson,* the state has urged that a number of claims are procedurally barred, and we utilize the same approach here as we took in that case. 623 F.Supp. at 1127–28; *see also Edwards v. Thigpen,* 595 F.Supp. 1271 (S.D.Miss.1984).

■ In *Edwards,* we refused to honor, as an adequate and independent state ground for decision, the Mississippi Supreme Court's invocation of strict procedural default rules on error coram nobis review for issues not raised on direct appeal to that Court. *See* 595 F.Supp. at 1277–79. Under the circumstances present there, the retroactive application of the strict procedural default rule would have unjustly penalized the petitioner because of the Mississippi Supreme Court's previous practice of addressing the merits on error coram nobis review regardless of a default on direct appeal. As we subsequently explained in *Johnson,* however, our holding in *Edwards* is of limited prospective applicability. First, it initially applies only to a class of case in which the direct appeal to the Mississippi Supreme Court was taken prior to its March 23, 1983, decision in *Edwards v. Thigpen,* 433 So.2d 906 (Miss.1983). Like *Johnson,* the instant case meets that criteria. Second, under *Johnson,* where error has not been preserved *at trial,* and has

not been otherwise addressed by the appellate court on the merits, we will on federal habeas review honor the state court's invocation of its procedural default rules unless the requisite showing of cause and actual prejudice has been made to explain the default. *See Johnson*, 623 F.Supp. at 1127–28; *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

## II. DISCUSSION

A. *Alleged Violation of Witherspoon v. Illinois.*

█ Petitioner contends that the exclusion of prospective juror Mary Rouchon for cause violated *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). It is well settled, of course, that the improper exclusion of even one juror under the applicable Sixth Amendment standard will nullify the imposition of the death penalty. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). Petitioner asserts that the record of the voir dire indicates that juror Rouchon merely had scruples about the death penalty and that her responses demonstrate that she could vote to impose the death sentence in certain cases and would abide by the trial court's instructions. According to Petitioner, the Mississippi Supreme Court erroneously relied only upon certain responses by Rouchon which were taken out of context and out of order.

For reasons set forth further below, we have determined that Petitioner's claim in this regard is without merit.

The entire voir dire of prospective juror Rouchon, as indicated by the trial court transcript, is as follows:

BY THE COURT: Do any of you know of any reason why you shouldn't sit as a juror on the trial of this case? Yes, mam?

A. My name is Mary E. Rouchon. I am on Panel 10. I have very strong feelings about being a juror and sending somebody to jail. I don't think I could.

Q. Sending someone to jail?

A. Or to death—give the death penalty. I think I would—it would sway my—what I decide on it.

Q. Thank you. I'll let the attorneys question you a little closer in that regard. Is there anyone else?

[R.100].

BY THE STATE: Thank you, Mrs. Rouchon, you said you didn't think you could send someone to jail and then you said or death, is that right?

A. (Juror nodded affirmatively).

Q. I would assume that the lesser of the two would be to send someone to jail, so are you sure that you couldn't sentence someone to death?

A. I am positive.

Q. You are positive you couldn't return a verdict recommending the death penalty, is that correct?

A. Yes, sir.

BY THE STATE: If it please the Court, I move to excuse the juror for cause.

BY THE COURT: Reserved.

Q. Mrs. Rouchon, can you think of any kind of circumstances where you would sentence someone to capital punishment—to the death penalty?

A. If they had killed several people.

Q. Several people. Only in some instances then you would return a death penalty, is that correct?

A. Yes.

Q. You can think of some circumstances where you would return a death penalty?

A. Yes.

Q. Thank you. Now, what did you mean when you said you couldn't send someone to jail?

A. If someone had killed another person even though they had robbed a store, I don't think I could do that.

Q. Now, if what? If someone had killed someone robbing a store, you don't think you could send them to jail?

A. Yes, I could send them to jail. I could not send them to the death penalty.

Q. I see. So a murder in the process of a robbery, you could not vote for the death penalty under any circumstances, is that correct?

A. (Juror nodded.)

Q. You would not even consider it?

A. No. If this person had killed several people and had robbed store after store, I could.

Q. So you are saying if someone had committed several crimes or just if they had killed several people?

A. Killed.

Q. Only if they had killed several people over a long period of time, is that right?

A. (Juror nodded affirmatively.)

Q. So you don't believe someone that takes someone else's life is justified in having the same thing happen to them, is that correct?

A. (Juror nodded negatively.)

Q. You've got to say yes or no so the court reporter can write it down.

A. I said before in some instances. You're always saying that if somebody took someone else's life, they should be put to death?

Q. That's the question. And your answer is no?

A. No.

Q. No question in your mind about that? You could not follow the law if the law was that you are to consider the death penalty and you decide on whether or not it's a bad enough case, you couldn't even consider it if it was just one person killed?

A. If someone killed someone else, like I said, out of fear because they had robbed a store, no.

Q. I'm not asking you in self-defense or anything like that. Self-defense we wouldn't be here. He wouldn't have pled guilty.

A. (Juror nodded negatively.)

Q. Your answer is still no, you could not consider it?

A. (Juror nodded.)

Q. And your answer is still no. Thank you. Is there anyone else?

[R. 104–106].

BY THE STATE: How many members of the jury are of the Catholic faith? Mrs. Rouchon, you heard me talking with Mr. Daley. Does your Catholic belief lead you to have the faith of the statements before or is it just your personal belief, not by virtue of the fact that you're Catholic, is that right?

A. Yes.

[R. 146–147].

BY DEFENSE COUNSEL: Connie Ray Evans has—will have, of course, twelve of you to sit in judgment and this will be a representative cross section of the community, or is intended to be, and some people in the community are in favor of capital punishment and some people are opposed to capital punishment. There have been a couple of people who have indicated that they are opposed to capital punishment and I need to ask them certain questions. Mrs. Rouchon, now, you understand, of course, that it is your public duty—sitting on a jury is a public duty and you understand that the Defendant has the right to have a cross section of the community on the jury. Now, the Judge at the end of the case, as he's just indicated, will instruct everyone as to the law and if the Judge instructs you that death is a penalty that should be considered in this particular case, would you be able to consider that instruction and that law?

A. (Mary Rouchon nodded.)

Q. Your answer is yes, you would consider it or is it no? I'm sorry.

A. No.

Q. Now, I understand earlier that you said that you could think of some circumstances where the death penalty might be a proper sentence?

A. (Mary Rouchon nodded affirmatively.)

Q. If the—if you hear the evidence in this case, would you be able to listen to

the evidence in this case and determine and decide if this is a proper case?

A. (Mary Rouchon nodded affirmatively.)

Q. You could—you could listen to the evidence in this case and decide if this would be a proper case for the death penalty?

A. Yes.

Q. Now, if you hear the evidence in this case and decide that the proper—death would be a proper penalty, would you then consider the Judge's instruction if he instructed you that death would be a proper penalty?

A. (Juror nodded affirmatively.)

Q. You could consider that. Understand, of course, that we are asking for Connie Ray Evans' life and I will be asking questions concerning whether or not you will vote for the life penalty in this case momentarily.

In ruling on the state's subsequent challenge to Rouchon for cause, the trial judge noted that Rouchon had vacillated on answers to questions put to her by both the prosecution and the defense but that she had "convinced me that she could not consider the death penalty under any circumstances...." [R. 181.]

Petitioner's argument is specifically couched in *Witherspoon* terminology, i.e., that a juror may not be excluded unless he makes it "unmistakably clear" that he would "automatically" vote against the death penalty regardless of the evidence. *See* 391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21. In *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), however, the Supreme Court clarified its ruling in *Witherspoon* and held that the standard it had enunciated in *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), was properly applicable in determining when a juror may be excluded for cause because of his views on the death penalty. As noted in *Witt*, the *Adams* standard:

is whether the juror's views would *"prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."* We note that, in addition to dispensing with Witherspoon's reference to "automatic" decisionmaking, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity."

469 U.S. at ——-——, 105 S.Ct. at 852, 83 L.Ed.2d at 851–52. (emphasis supplied). The Court reasoned that the *Adams* test was more compatible with the circumscribed discretion of juries in present-day death penalty cases than *Witherspoon,* that the statements in *Witherspoon* indicating a strict standard were "dicta" and not controlling, and that the *Adams* test was in accord with the traditional standards for juror exclusion in other types of cases. 469 U.S. at ——-——, 105 S.Ct. at 850–51, 83 L.Ed.2d at 850–51. In this latter regard, the Supreme Court added:

[T]here is nothing talismanic about juror exclusion under *Witherspoon* merely because it involves capital sentencing juries. *Witherspoon* is not grounded in the Eighth Amendment's prohibition against cruel and unusual punishment, but in the Sixth Amendment. Here, as elsewhere, the quest is for jurors who will conscientiously apply the law and find the facts. That is what an "impartial" jury consists of, and *we do not think,* simply because a defendant is being tried for a capital crime *that he is entitled to a legal presumption or standard that allows jurors to be seated who quite likely will be biased in his favor.*

*Id.* at ——, 105 S.Ct. at 852, 83 L.Ed.2d at 851 (emphasis supplied).

As set forth in the voir dire, in response to various questions from the prosecutor, the court, and defense counsel, prospective juror Rouchon: (1) initially indicated "strong feelings" about the death penalty and that it might "sway" her decision; (2) stated that she was "positive" she could not return a verdict imposing death; (3) stated that she could consider the death penalty only if the defendant had killed several people over a long period of time;

(4) told the trial judge that she could not follow the law or consider the death penalty where a killing in the course of a robbery was involved; (5) responded negatively to an inquiry by defense counsel as to whether she would be able to consider the judge's instructions that the death penalty should be considered in the case; and (6) indicated that she could listen to the evidence, and, upon a determination by her that the death penalty would be "proper" in the case, that she would then consider the judge's instructions.

A trial court's determination that a prospective juror in a capital sentencing case is biased and may therefore be excluded for cause is a finding of fact which is subject to a presumption of correctness under 28 U.S.C. § 2254(d). *Witt,* 469 U.S. at ――, 105 S.Ct. at 854, 83 L.Ed.2d at 854. Since such determinations involve matters which are peculiarly within the province of a trial judge, the review of a federal habeas court is appropriately deferential. *Id.; see also, Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

The trial court's determination that Rouchon should be excluded from the capital sentencing jury in this case is "fairly supported by the record." *Witt,* 469 U.S. at ――, 105 S.Ct. at 857, 83 L.Ed.2d at 858. On one occasion, Rouchon stated that she was positive that she could not return a verdict of death, and on another stated unequivocally that she would not be able to consider the judge's instructions regarding the death penalty. From these responses, as well as others given in the course of the voir dire, the trial judge might well have concluded that Rouchon's views on the death penalty would substantially impair her ability to serve as an unbiased juror. The record does tend to indicate that Rouchon would be able to consider the death penalty in the circumstance where a defendant had committed several murders in serial-killing fashion.[2] However, it is readily apparent from Rouchon's testimony that

her views would prevent her from considering or following the court's instructions where the defendant had killed one individual in the course of a robbery. Even under the strict requirements of *Witherspoon,* and without acknowledging the deferential standard of review required by § 2254(d), the Fifth Circuit has held that jurors who express an inability to follow the law in the general class of case before the court might permissibly be excluded. *Brooks v. Estelle,* 697 F.2d 586, 589–90 (5th Cir.1982); *Williams v. Maggio,* 679 F.2d 381, 385–86 (5th Cir.1982) (en banc). In *Williams,* the Fifth Circuit noted:

> Ms. Brou's responses demonstrated that she would be unwilling to consider the death penalty where the crime charged was murder committed during a robbery. She does leave open the possibility that she would consider this penalty in a more "hideous" case. Her unwillingness to do so here, however, is firm.

679 F.2d at 386. The same observations are, in our view, applicable in the instant case.

We reject Petitioner's contention that Rouchon's responses to the final questions of defense counsel require a different conclusion. A *Witt-Witherspoon* analysis depends on more than simply who has the last word. The trial judge may permissibly view "the questioning as a whole," *Witt,* 469 U.S. at ――, 105 S.Ct. at 858, 83 L.Ed.2d at 858, and undoubtedly did so in this case. He was not necessarily obligated to credit Rouchon's responses to defense counsel's attempt to rehabilitate her as a prospective juror, and this is particularly true in light of the unequivocally negative response given to defense counsel immediately prior to the statements to which Petitioner points.

Under the applicable standard of review, the exclusion of juror Rouchon for cause has fair support in the record and Petitioner has failed to establish by clear and con-

---

**2.** The trial judge, however, possibly aided by his first-hand observation of the demeanor of the witness, *see Witt,* 469 U.S. at ――, 105 S.Ct. at 857, 83 L.Ed.2d at 858, and the context provided by her other testimony, remained unconvinced that Rouchon could consider the death penalty under any circumstances whatsoever.

vincing evidence that this determination was erroneous. Accordingly, this claim is lacking in constitutional merit.

### B. Alleged Misapplication of "Arrest-Avoidance," and "Under Sentence of Imprisonment" and "Felony Murder" Aggravating Circumstances.

Petitioner contends that the utilization of the "Arrest-Avoidance" [3] and "Under Sentence of Imprisonment" [4] aggravating circumstances in this case was constitutional error. He further complains of the "double counting" of felony murder at both the definitional stage and as an aggravating circumstance. The Fifth Circuit opinion in *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), is dispositive of these claims and is controlling here.

■ With respect to the "arrest avoidance" factor, Petitioner argues that this aggravating circumstance is subject to an overbroad construction and that the trial court's instructions to the jury were not specific enough to inform it of a limiting construction. In *Gray v. Lucas*, the Fifth Circuit rejected almost identical contentions to those made here. 677 F.2d at 1109–10. It noted that the Mississippi courts had limited the application of the circumstances "to refer to purposefully killing the victim of an underlying felony to avoid or prevent arrest for that felony." So construed, the court observed that this factor was directed to a legitimate state interest and was "not so broad that it comprehends an impermissibly large group of murders." *Id.* at 1110.

■ Moreover, and contrary to Petitioner's implicit contention, both the instructions given to the jury and the jury's verdict [R. 454, 471] made reference to the "purpose" of Petitioner regarding this factor. Evidence was introduced by the State to support the contention that the victim of the robbery was killed by Peti-

tioner for the purpose of avoiding or preventing arrest. Specifically, Petitioner's confession, which was held properly introduced into evidence by the Mississippi Supreme Court, stated that Pahwa was shot because "the man knew me and I did not want him to identify me." 422 So.2d at 743.

■ With respect to the "under sentence of imprisonment" factor, Petitioner argues in essence that this aggravating circumstance could not be applied in his case because he was not physically incarcerated at the time of the murder. Petitioner had previously been adjudged guilty on three counts of grand larceny and burglary in January 1979 and had served one year, but at the time of the homicide in 1981 he was under a suspended sentence from those convictions. [R. 243–244; 271–273].

In its opinion on direct appeal, the Mississippi Supreme Court concluded that:

> [u]nder Mississippi statutes and decisions, when a person has been convicted and placed on probation, particularly here, where four (4) years of a five year sentence were suspended, such sentence is a sentence under imprisonment.

422 So.2d at 742. We observe that in *Gray v. Lucas, supra,* the Fifth Circuit described as "completely without merit" a constitutional argument that a murder committed while a defendant was on parole fell outside the parameters of the "under sentence of imprisonment" factor. 677 F.2d at 1109. It added: "We fail to understand how the state could have more clearly defined this factor nor do we see any danger of arbitrary application." *Id.* For state law purposes, the Mississippi Supreme Court was entitled to view a suspended sentence as the functional equivalent of parole. Following *Gray,* we perceive no constitutional error here.

■ Petitioner's argument that Mississippi may not constitutionally make mur-

---

**3.** Under *Miss.Code Ann.* § 99–19–101(5)(e), a murder which is committed "for the purpose of avoiding or preventing a lawful arrest...." may be utilized as an aggravating circumstance.

**4.** A murder committed while a defendant is "under a sentence of imprisonment" may serve as an aggravating circumstance as provided for in *Miss.Code Ann.* § 99–19–101(5)(a).

ders committed in the course of a robbery "automatically" eligible for the death penalty, (and thus "double count" by using that circumstances for definitional purposes at the guilt phase and also as an aggravating circumstance) is misplaced and is without merit. *Gray,* 677 F.2d at 1104–05. *See also Cabana v. Bullock,* —— U.S. ——, —— n. 3, 106 S.Ct. 689, 696 n. 3, 88 L.Ed.2d 704, 716 n. 3.

### C. *Alleged Misapplication of "Heinous, Atrocious, or Cruel Aggravating Circumstance"*

■ Petitioner contends that the aggravating circumstance of whether the capital offense was "especially heinous, atrocious, or cruel", *Miss.Code Ann.* § 99–19–101(5)(h), was improperly submitted to the jury without a limiting instruction and without sufficient evidentiary support from the facts in the case.

For appellate review purposes, the Mississippi Supreme Court has defined this aggravating circumstance as "the conscienceless or pitiless crime which is unnecessarily tortuous to the victim," *Gray,* 677 F.2d at 1110–11, *quoting, Coleman v. State,* 378 So.2d 640, 648 (Miss.1979); *see also Johnson v. Thigpen,* 623 F.Supp. 1121, 1136–38 (S.D.Miss.1985). *Gray* holds that this narrowing construction meets constitutional requirements. *See also Gray v. Lucas,* 685 F.2d 139 (5th Cir.1982) (on petition for rehearing). Under the current precedent of the Fifth Circuit, there is no constitutional requirement that the trial court define the terms "especially heinous, atrocious, or cruel" in its instructions to the jury. *Moore v. Maggio,* 740 F.2d 308, 321 (5th Cir.1984). As stated in *Moore:*

> The United States Supreme Court has thus far declined to require that the jury must be instructed of the narrow construction of a potentially overbroad aggravating circumstance, such as whether the crime is "especially heinous, atrocious, or cruel." Instead, the Court has looked to state appellate courts "to weed out those cases in which an overly broad construction is applied by the jury...."

*See Williams v. Maggio,* 679 F.2d 381, 410 (5th Cir.1982) (en banc) (Randall, J., dissenting) *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). 740 F.2d at 318–19. While the Mississippi Supreme Court has recently stated, at least in dictum, that the limiting construction should be included in the instructions regarding this aggravating circumstance, *Mhoon v. State,* 464 So.2d 77, 84–85 (Miss. 1985), the lack of such a definition in this case was not constitutional error.

The Mississippi Supreme Court reviewed the evidence and concluded that it was sufficient to put this aggravating circumstance before the jury for determination. The state appellate court observed:

> In the case *sub judice* the victim was forced to kneel on the floor behind the counter with a .38-caliber revolver pointing at his head, he was made to stand at gunpoint and open the cash register, and again was forced to kneel on the floor with the revolver still pointing at his head. He was physically assaulted by one of the robbers emptying his pockets, all occurring over a short period of time. From these facts, the jury could consider mental torture and aggravation which the victim probably underwent, and to determine whether or not the murder under all the facts and circumstances was especially heinous, atrocious or cruel.

422 So.2d at 743; *see also* 441 So.2d at 522.

In discussing Mississippi's application of this factor to pitiless crimes which are unnecessarily tortuous to the victim, the Fifth Circuit in *Gray* stated in dicta that "the only arguable exception" to the consistent application of the factor was *Washington v. State,* 361 So.2d 61 (Miss.1978), *cert. denied,* 441 U.S. 916, 99 S.Ct. 2016, 60 L.Ed.2d 388 (1979), in which "the defendant robbed a convenience store and shot the clerk while leaving the store." 677 F.2d at 1110–11. The Court of Appeals observed that "although the murder [in *Washington* ] was cold-blooded, it was arguably not a "pitiless crime which is unnecessarily tortuous to the victim."

The same observation might be made in the instant case. As the Mississippi Supreme Court probably recognized in *Mhoon, supra,* factual scenarios such as that in this case present conceptual problems with respect to the potentially overbroad application of the aggravating factor. At the same time, however, the application of the "especially heinous, atrocious, or cruel" factor has been deemed proper where the evidence indicates that the homicide was committed in the fashion of a senseless execution, with the perpetrator in direct physical control of a passive or incapacitated victim. *See Turner v. Bass,* 753 F.2d 342, 351–53 (4th Cir.1985); *Johnson,* 623 F.Supp. at 1138. In such circumstances, the mental anguish and psychological torture suffered by the victim prior to the infliction of the death-producing wound may be considered with respect to the "heinous, atrocious or cruel" factor and make its application constitutionally unobjectionable. *Francois v. Wainwright,* 741 F.2d 1275, 1286–87 (11th Cir.1984). Accordingly, we cannot say that the approach taken by the Mississippi Supreme Court in its construction of this factor in this case was constitutionally flawed.

■ Moreover, the "especially heinous, atrocious or cruel" nature of the capital offense was only one of several statutory aggravating circumstances relied upon by the State and found by the jury. This contrasts sharply with the situation present in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) where the sole aggravating factor said to support the death penalty was Georgia's equivalent statutory provision, which could not be constitutionally applied to the facts present there. *See Barclay v. Florida,* 463 U.S. 939, 947 n. 5, 103 S.Ct. 3418, 3423 n. 5, 77 L.Ed.2d 1134, 1142 n. 5 (1983) (plurality opinion). In its alternative holding that the death penalty should be upheld in this case even assuming the "heinous, atrocious, or cruel" factor was not validly applied, the

Mississippi Supreme Court held that the three other statutory aggravating circumstances found by the jury, i.e., murder in the course of robbery, for the purpose of avoiding arrest, and by a person under a sentence of imprisonment, were supported by "overwhelming" evidence. 422 So.2d at 743; 441 So.2d at 522. As we have noted above, there was absolutely no constitutional error with respect to any of these other aggravating factors. Under the current precedent of the Fifth Circuit, a death sentence will not be overturned on habeas review because of the constitutional infirmity or invalidity of one aggravating circumstance so long as the other statutory aggravating factors are supported by the evidence. *Watson v. Blackburn,* 756 F.2d 1055, 1057–58 (5th Cir.1985) (describing principle as "settled law"); *Moore v. Maggio,* 740 F.2d 308, 321 (5th Cir.1984) (rejecting argument that submission of invalid aggravating circumstance "skewed the balance" struck by jury in voting for death); *Knighton v. Maggio,* 740 F.2d 1344, 1351–52 (5th Cir.1984); *Williams v. Maggio,* 679 F.2d 381, 388–90 (5th Cir.1982) (en banc).[5] *Compare Collins v. Lockhart,* 754 F.2d 258, 265–68 (8th Cir.1985).

In addition, the Mississippi Supreme Court in this case conducted a capital sentence and proportionality review and determined that "the sentence of death is not excessive or disproportionate to the penalty imposed in [other] cases, considering both the crime and the manner in which it was committed and the defendant." 422 So.2d at 746–47. *See Knighton, supra; Barclay,* 463 U.S. at 958, 103 S.Ct. at 3428.

For these reasons, the Petitioner's claim affords no basis to overturn the death penalty on habeas review.

### D. *Exclusion of Minister's Testimony.*

Defendant called as a witness Minister Frank Owen of Jackson for the asserted purpose of obtaining expert opinion on

---

**5.** *Watson, Moore, Knighton,* and *Williams* all arose under Louisiana's death penalty scheme. The schemes of Louisiana and Mississippi are similar in pertinent respects, since they both require the jury to weigh or balance the aggravating circumstances against the mitigating in determining a penalty. *See Gray,* 677 F.2d at 1105–06; *Williams,* 679 F.2d at 381.

Christian ethics with respect to capital punishment. Minister Owen testified that the theological conferences of the Methodist, Presbyterian, Episcopal, and Lutheran churches were opposed to capital punishment. [R. 411]. The state interposed an objection to testimony concerning biblical teachings, which was sustained by the trial court. [R. 412–13]. Defense counsel indicated that had Minister Owen been permitted to testify, he would have contrasted the Old Testament with the New Testament and would have given examples from the Bible wherein serious crimes had been forgiven through the exercise of Christian mercy. [R. 413–15].

■ We reject Petitioner's contention that the exclusion of this proffered testimony constituted a violation of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). As this Court recently observed in *Johnson v. Thigpen*, 623 F.Supp. 1121, 1129–30 (S.D.Miss.1985), the *Lockett-Eddings* rule focuses upon the inability of the state at sentencing to exclude relevant evidence pertaining to the particular characteristics and background of the defendant and the particular circumstances of the crime. Those decisions stress the need for an *individualized* determination at the punishment phase, and *Lockett* specifically preserved the "traditional authority" of the trial court to exclude evidence not relevant to such a determination. 438 U.S. at 604 n. 12, 98 S.Ct. at 2965 n. 12. The evidence proffered in the instant case, consisting of an abstract review of biblical teachings, was not in any manner related to the particularized circumstances of the offender or the crime. The exclusion of

this proffered testimony thus fell within the traditional authority of the trial court, and no constitutional error or violation of *Lockett-Eddings* was committed.[6]

E. *Trial Court's Refusal to Give Separate "Mercy" Instruction.*

■ Petitioner contends that the trial court's refusal to give Instruction D–8 violated the Eighth and Fourteenth Amendments. That instruction provided:

> The Court instructs the jury that even if you find that aggravating circumstances outweigh the mitigating circumstances, you may still recommend mercy and sentence the defendant to life imprisonment.

The trial judge initially refused this instruction and, upon further inquiry by defense counsel, indicated that the substance of this instruction was covered in other instructions to be given by the court. On direct appeal, the Mississippi Supreme Court agreed with the trial court. 422 So.2d at 745–46.

In general, Mississippi's death penalty scheme:

> [d]oes not automatically require the jury to impose death when aggravating circumstances are shown in the absence of mitigating circumstances.

> \* \* \* \* \* \*

> If the state merely proves the existence of an aggravating circumstance, the jury is free to find it insufficient to warrant death and is not required to automatically impose death. Mississippi's capital murder statute leaves the appellant the option of presenting evidence (mitigating circumstances) on why the death penalty should not be imposed, without requiring him to do so.

6. Contrary to Petitioner's suggestion, absolutely nothing in *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) or *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) supports a conclusion that the exclusion of Reverend Owens' testimony violated the *Lockett-Eddings* principle. Both of those cases in fact continue to acknowledge the interpretation set forth above. *Barclay*, 463 U.S. at 967, 103 S.Ct. at 3433; *Zant*, 462 U.S. at 879, 103 S.Ct. at 2744. Moreover, we hardly think

that the Supreme Court's general observation in *Barclay* that "it is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing," 463 U.S. at 950, 103 S.Ct. at 3424, requires the trial judge to permit the second-phase proceeding to become an evidentiary forum for the purpose of educating initially, or re-educating, the members of the jury as to Christian ideals or community values.

*Coleman v. State,* 378 So.2d 640, 646–67 (Miss.1979). Under *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and its progeny, a state may not constitutionally preclude the consideration of statutory or relevant non-statutory mitigating factors regarding the particular background and characteristics of the defendant and the particular circumstances of the crime. *See also Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 874–75, 71 L.Ed.2d 1 (1982); *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235, 251 (1982). The Fifth and Eleventh Circuits have read *Lockett* to require that instructions must clearly inform the jury of its option to return a verdict of life imprisonment. *Chenault v. Stynchcombe,* 581 F.2d 444, 448 (5th Cir.1978); *Spivey v. Zant,* 661 F.2d 464 (5th Cir.1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Corn v. Zant,* 708 F.2d 549, 562 (11th Cir.1983). Specifically, instructions at the sentencing phase which basically fail to notify the jury of "the option to impose life imprisonment even though aggravating circumstances are found" will not pass constitutional muster. *Corn, supra, quoting Goodwin v. Balkcorn,* 684 F.2d 794, 802 (11th Cir.1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983).

The instructions given in the instant case clearly met the foregoing standard. Instruction D–1 states that:

> You are instructed that even if you find the existence of one, two, or three or more aggravating circumstances, you still can conclude that the circumstances are insufficient to warrant death, and you may impose a sentence of life imprisonment.

Instruction D–7 further reiterated the options available to the jury. It advised that the jury had to find a statutory aggravating circumstance before imposing the death penalty, and also "that you are not required to find any mitigating circumstance in order to make a recommendation of mercy that is binding on the trial court...."

As we noted in *Edwards v. Thigpen,* 595 F.Supp. 1271, 1286 (S.D.Miss.1984), this Court is unaware of any requirement based in the Constitution which would go beyond the foregoing principle that instructions be clear on mitigating circumstances and the available options, or would further mandate that the jury be *specifically* charged that it could recommend "mercy" even if it found that the aggravating circumstances outweighed the mitigating circumstances.[7] Moreover, even if the Constitution imposed such a requirement, we agree with the Mississippi Supreme Court that the substance of the requested instruction was given in Instructions D–1 and D–7.

This claim of Petitioner is accordingly lacking in merit.

### F. *Evidentiary Rulings; Prosecutor's Argument.*

Petitioner contends, at pp. 22–34 of the Petition, that various errors made by the trial court led the jury to impose the death penalty in an atmosphere of passion and prejudice contrary to the requirements of the Eighth Amendment. In essence, this argument has two components. First, Petitioner complains of several evidentiary rulings. Second, Petitioner asserts that the prosecutor's closing argument to the jury was inflammatory and prejudicial.

#### 1. Evidentiary Rulings.

With respect to the allegedly erroneous evidentiary rulings, Petitioner complains of the trial court's admission into evidence during the state's case-in-chief in the sentencing phase of (1) color slides of the victim of the homicide; (2) the bullet which

---

**7.** We in no manner suggest that such an instruction would be *impermissible* under the Constitution. So long as the sentencing jury is given meaningful guidance in order to channel its discretion and is not precluded from an individualized consideration of the offender and his crime, the states have substantial latitude in determining what factors are relevant to a death penalty determination. *California v. Ramos,* 463 U.S. 992, 999–1001, 103 S.Ct. 3446, 3452–53, 77 L.Ed.2d 1171, 1180–81 (1983). In our view, the degree of emphasis which should be specifically placed upon the non-objective criteria of "mercy" falls within this latter category.

caused death and also certain belongings of the victim; (3) testimony of a pathologist and an investigating officer with respect to the cause of death and the scene of the crime, respectively; and (4) testimony by the victim's brother.

On direct appeal, the Mississippi Supreme Court addressed the evidentiary rulings on matters (1), (3), and (4) above and rejected the Defendant's arguments that the evidence was irrelevant to any proper statutory aggravating circumstance and should not have been admitted in light of his plea of guilty to the robbery-murder. The court determined that these exhibits and testimony were relevant to various aggravating circumstances in the case and that their admission was proper. 422 So.2d at 742–44.

The standard of review to be applied by this Court with respect to these alleged errors is summarized in *Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir.1985):

> In reviewing state evidentiary rulings, our role is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir.1984). Thus, "[w]e do not sit as a super state supreme court to review error under state law." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). We have held that "the erroneous admission of prejudicial testimony justifies habeas corpus relief only when it is 'material in the sense of crucial, critical, highly significant factor.'" *Bailey, supra*, at

1168–69 (quoting *Skillern, supra*, at 852).

▇▇▇▇ In our view, the admission of the color slides depicting the victim's wounds (a gunshot to the head) and the scene of the crime, the testimony of the investigating officers and of the pathologist as to the cause of death from the slides, and the bullet which inflicted the fatal wound,[8] was not error at all, much less error which would justify habeas relief under the standard set forth in *Mattheson, supra*. *See also Cronnon v. State of Alabama*, 587 F.2d 246, 250–51 (5th Cir.1979), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979). This evidence apparently gave the jury an accurate presentation of some specific particulars of the crime that was in fact committed and was thus relevant at least to the statutory aggravating circumstance concerning robbery-murder, *Miss.Code Ann.* § 99–19–101(5)(d). Stripped to its essentials, the Petitioner's argument is simply that the Petitioner's plea of guilt at the guilt-innocence phase pre-empted the state's ability to introduce such evidence at the sentencing phase and made the admission of such additional evidence "prejudicial." This Court, however, is not aware of any authority finding a denial of fundamental fairness where, as here, a prosecutor refuses to rely upon a bare minimum of proof which might be *legally* sufficient for the jury to impose death, but instead seeks to buttress his case with evidence which has a basic relevance to an aggravating circumstance and is not prejudicial *per se*. As the Mississippi Supreme Court noted, "an orderly and coherent procedure in the sen-

---

8. The Defendant objected to a remark made by one of the officers that the victim's "pregnant" wife was present at the scene while the investigation was under way. This objection was sustained by the trial judge and the jury was instructed to disregard the statement. The trial court's actions were deemed proper under state law, 422 So.2d at 744, and any contention that constitutional error was committed is patently without merit.

We further note that the Petitioner is procedurally barred from litigating the admission of

various personal effects, such as eyeglasses and wristwatch, that were in the victim's possession at the time of the crime. No objection to the admission of those items was lodged at trial and the matter was not raised or addressed on direct appeal. The matter was first urged on error coram nobis review, and was found to be barred. No showing of cause and prejudice has been made, and we observe the bar on habeas review. *Johnson*, 623 F.Supp. at 1128.

tencing phase requires proof of the manner in which the homicide was committed." 422 So.2d at 742.[9]

■ The remaining contention of Petitioner concerns the testimony of Dr. Balder Raj Pahwa, the victim's brother. The Mississippi Supreme Court held that testimony of Raj (who was not present during the commission of the crime) had probative value and was for the purpose of identifying the victim. 422 So.2d at 743. The court noted that the witness was emotional and sobbed during his testimony.

In our view, the calling of the brother of the victim by the prosecution at the sentencing stage carried with it the *potential* for abuse.[10] Having carefully reviewed Raj's testimony, however, the Court is convinced that no error of constitutional magnitude occurred in this case.

Raj's testimony was extremely brief, requiring only three pages of transcript [R. 239–243]. Raj testified that he was a professor at Jackson State University and that he assisted his wife and other family members in the operation of various businesses, including the neighborhood grocery in which his brother was killed. That store, along with the other businesses, were closed when his brother died. Raj further testified that his brother had been born in India, that he had resided in this country for four years, and that he was a night student at Mississippi College who worked at the convenience mart during the day. He identified his deceased brother from one of the color slides previously admitted.

Here, as in *Moore v. Zant*, 722 F.2d 640 (11th Cir.1983), the testimony as to the background and characteristics of the victim was of a limited nature. While this Court is not directly bound by the Eleventh

Circuit's observations in *Moore*, 722 F.2d at 646, we agree generally with the proposition that a comparison of the characteristics of the victim and the Defendant should not dominate or pervade the sentencing phase. *See Willie v. Maggio*, 737 F.2d 1372, 1391 n. 33 (5th Cir.1984); *Brooks v. Kemp*, 762 F.2d 1383, 1409 (11th Cir.1985) (en banc). No such pervasive comparison occurred in this case. As stated in *Moore*, "we are not prepared to hold that it violates the constitution for the jury to know who it was that was the victim of the murder." 722 F.2d at 646.

■ In his closing argument, the prosecutor made one arguably improper comment, based on Raj's testimony, in stating that the imposition of the death penalty upon defendant could "cure" owners of convenience stores like Raj from having to close their businesses because of such homicides. [R. 452]. The trial court overruled Defendant's objection to this remark. Arguments premised on the deterrence of crime and on an invocation of duty to the victims of crime do not necessarily implicate a fundamentally fair sentencing hearing. *See, e.g., Kirkpatrick v. Blackburn*, 777 F.2d 272 (5th Cir.1985); *Brooks v. Kemp*, 762 F.2d 1383, 1407 (11th Cir.1985) (en banc). In any event, even if improper, this brief and isolated comment, viewed in the context of the arguments and evidence as a whole, clearly was not so egregious or a factor so significant or prejudicial as to justify habeas relief. *Matteson, supra; Houston v. Estelle*, 569 F.2d 372, 377–84 (5th Cir.1978).

2. Prosecutor's Closing Argument.

The second part of Petitioner's argument that the death penalty was unconstitutionally imposed on the basis of "passion and prejudice" is grounded in a claim that the

---

9. Depending on the circumstances, that "proof" might be introduced at the trial on guilt and simply be incorporated into the sentencing phase, or, as here, originate at the sentencing phase. In some cases, a combination approach might be utilized, with some proof incorporated from the guilt phase and other additional evidence introduced at the sentencing phase.

10. The imposition of the death penalty should generally be "based on reason rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). This goal is served by aggravating and mitigating circumstances, and the central focus of the sentencing phase is therefore appropriately directed toward the background and characteristics *of the defendant* and the particular circumstances of his crime.

prosecutor engaged in a pervasive pattern of inflammatory argument throughout the sentencing trial. In this regard, Petitioner complains of (1) references to the consequences of a verdict of "life imprisonment" with respect to the defendant; (2) negative comments regarding the possible rehabilitation of the defendant; (3) a description of the crime and a characterization of same as the "most horrible crime I can imagine"; (4) the reading to the jury portions of a note in evidence written by Petitioner to his accomplice; and (5) remarks that Petitioner was not entitled to "mercy."

The sole portions of the prosecutor's argument to which the defendant made objections at trial were grounds (1) and (4) above. On direct appeal, only ground (1), concerning the prosecutor's statements on the consequences of a life imprisonment verdict, was raised by Petitioner as error and addressed on appeal.[11] 422 So.2d at 746. The record reveals that on application for error coram nobis relief, the Petitioner again raised the issue of the life imprisonment argument, and also raised the issue of the prosecutor's argument generally, including comments (2), (3), and (5), which were not objected to at trial. In denying error coram nobis relief, the Mississippi Supreme Court simply stated that Petitioner's claim that "the prosecuting attorney's argument constituted error" was "presented to this Court on direct appeal and [was] found to be without merit." Accordingly, the Mississippi Supreme Court held that the contention could not be relitigated and was barred. 441 So.2d at 523. As noted directly above, the only contention raised

and addressed on direct appeal was the argument regarding the life imprisonment remarks.

▮▮▮▮ While the matter is not entirely free from doubt, we think that ground (2), the rehabilitation argument; ground (3) the "horrible crime" comment; and ground (5), the consideration of "mercy" remark, are procedurally barred from habeas review in this Court. See Johnson v. Thigpen, 623 F.Supp. 1121, 1127–28 (S.D.Miss.1985) and cases cited therein. Although the Mississippi Supreme Court opinion is somewhat cryptic, we do not think it addressed those particular prosecutorial remarks, which were not objected to at trial or raised on direct appeal. For state law purposes, these additional claims on error coram nobis would be viewed as procedurally barred for reasons explained by the Mississippi Supreme Court in Edwards v. Thigpen, 433 So.2d 906 (Miss.1983), and as explicitly applied in this case on error coram nobis review with respect to other claims where error was not preserved. As Petitioner has made no showing of "cause and actual prejudice" in this Court to explain his default, these particular remarks of the prosecutor may not be appropriately considered or serve as a basis for a claim to federal habeas relief. Engle v. Isaac, 456 U.S. 107, 129–35, 102 S.Ct. 1558, 1572–75, 71 L.Ed.2d 783 (1982); Johnson, 623 F.Supp. at 1141. Moreover, even if Petitioner's claims regarding these remarks of the prosecutor are not waived, the comments did not implicate the existence of a fundamentally fair trial and do not warrant relief on the merits.[12]

---

**11.** In discussing this issue, the Mississippi Supreme Court categorized the issue as whether "the lower court err[ed] in *overruling objections* to parts of the closing argument of the prosecution." (Emphasis supplied).

**12.** With respect to the alleged "inflammatory" comments concerning the prospect of his rehabilitation, Petitioner relies on the following remarks:

What evidence has he ever given that he's capable of being rehabilitated. He gets convicted of burglary, grand larceny, grand larceny again and what does he do the next time. He moves up to the big league. He doesn't

leave any witnesses this time. Rehabilitation. Ladies and gentlemen, rehabilitation assumes that a person has been first habilitated. Connie Ray Evans has never in his life been habilitated. And you'll note that that makes reference to the possibility of his rehabilitation.

[R.430–31]. These remarks were made in the context of the prosecutor's initial discussion of the absence of evidence of mitigating factors in the case. They were grounded in evidence presented in the case concerning the background and prior criminal record of defendant, were directed to a relevant sentencing concern, Brooks v. Kemp, 762 F.2d 1383, 1408 (11th Cir.

Grounds (1) and (4) were preserved as error at trial and may be appropriately addressed on the merits on habeas review under *Johnson v. Thigpen*, 623 F.Supp. 1121, 1127–28, (S.D.Miss.1985) (discussing *Edwards v. Thigpen* ).

■ Initially, we observe that the prosecutor's closing argument on the whole was primarily directed to the evidence in relation to the existence of aggravating and mitigating circumstances in the case. As such, it was directed to the "proper concern" of the jury in sentencing proceedings. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 284 (5th Cir.1985).

In the rebuttal portion of closing argument, the prosecutor made the following comments:

Don't let the man that killed Arun Pahwa get loose with life imprisonment.... Don't let him, as they say, go to prison for life. And isn't that what he said. I wrote it down. You can send him to prison for a life of life imprisonment for a verdict of life. That is misleading—

\* \* \* \* \* \*

You can send him to life imprisonment, but that's ... just your sentence. And you can do something else that they said; you can decide that a sentence of life imprisonment is the way to stop crime. Did you hear the preposterous statement that the defense attorney made. The way to stop crime is to catch people and put them in prison. There's a man that was put in prison, sentenced to prison on three separate crimes and within two years and a couple of months he killed a man.

\* \* \* \* \* \*

Nothing is going to stop him from crime other than the sentence we're requesting. He's already shown you that. That's fact.

\* \* \* \* \* \*

What's the first thing he did when he ... found out what he was fixing to face? Well, tried and true jurors, when he was fixing to go to the penitentiary, escape. Think about that and he tells you the death penalty isn't a deterrent.

[R. 447–49].

As the Eleventh Circuit noted in *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir.1985) (en banc), a "permissible argument, no matter how 'prejudicial' or 'persuasive', can never be unconstitutional." 762 F.2d at 1403. The foregoing argument was not improper. It was grounded in the evidence in the case concerning the Defendant's past criminal history and the fact that he had once escaped from jail. As such, the argument related to the specific deterrent effect of the death penalty with respect to the Defendant and was manifestly permissible from a constitutional standpoint. *Brooks*, 762 F.2d at 1407, 1411 n. 46.

■ Had the prosecutor's argument regarding life imprisonment been premised upon the legal possibility of parole, it would theoretically have been improper under state law. *See Cabello v. State*, 471 So.2d 332, 345 (Miss.1985); *Johnson*, 623 F.Supp. at 1136. The Mississippi Supreme Court did not construe the argument in such a manner, and neither does this Court. Moreover, even an error of state law regarding an accurately-stated argument concerning the possibility of parole would not implicate the Constitution and would not afford any basis for federal habeas relief. *See California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983); *Engle v. Isaac*, 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982).

■ Petitioner further suggests the prosecution injected racial overtones into his closing argument. Based upon our review of the record, we find this claim to be absolutely and completely without merit. In the rebuttal portion of his closing argument, the prosecutor read a portion of a

1985) (en banc), and were not improper. Similarly, Petitioner's claims regarding the prosecutor's exhortations to the jury to base its decision on the evidence and follow the law and that

mercy was unwarranted upon the facts of the case, as well as his description of the "horrible" nature of the crime, are patently without constitutional merit.

note, admitted into evidence, from Petitioner to his accomplice, Alfonso Artis. The note had previously been admitted for the purpose of undercutting Petitioner's claim that he was now remorseful for his crime. [R. 330–32; 377–80]. The prosecutor stated:

> Oh, he's sorry. And oh, he didn't mean anything. But after all the fight and all the hearings, finally the real, the real Defendant stood up and in his own words, "My lawyer told me how you [Artis] got picked up and ... that you told these white peoples everything and that's how they ... knew me.... You told it on me, man, cause you didn't want to take the rap by yourself...." And what's he going to do if [Artis] comes in here and testifies? "Man, if I get some time ... I'm going to see that you get some, dig? Then you know what I'm going to do to you? The same thing I did to that man at the store, you know?" That's the real Connie Evans.

[R. 452–53]. The prosecutor did not inject racial considerations into sentencing at any stage, and Petitioner's claim that the prosecutor's reading of this note, which was authored by Petitioner himself and which mentions "white peoples" in passing, somehow made the sentencing hearing fundamentally unfair is patently far-fetched and requires no discussion.

In summary, Petitioner's contention regarding the prosecutor's closing argument, like his claims concerning the trial court's evidentiary rulings, presents no fundamental error of constitutional dimension.

### G. Claims Barred Under Wainwright v. Sykes

■ Certain claims raised in the Petition were not preserved as error by the Petitioner before the state trial court or raised and addressed on direct appeal before the Mississippi Supreme Court. These claims include alleged error regarding the lack of finding of an intent to take life,[13] the absence of "prior notice" of the aggravating circumstances upon which the state would rely, the absence of a presentence report, an "inadequate" report on the case by the trial judge, the alleged discriminatory application of the death penalty on the basis of race, etc., and that the death penalty is arbitrary as applied in Mississippi. These claims were raised for the first time on application for error coram nobis review, were not preserved before the trial court, and were found procedurally barred by the Mississippi Supreme Court. 441 So.2d at 523. Consistent with *Johnson v. Thigpen,* 623 F.Supp. 1121, 1128 (S.D.Miss. 1985), and in the absence of any allegation or showing of "cause and actual prejudice" to explain the default, these contentions are barred and may not serve as a basis for federal habeas relief. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

### III. CONCLUSION

For the reasons set forth above, we find that Petitioner's claims are either lacking in merit or are procedurally barred. The sentencing proceeding in his case was not fundamentally unfair and no error of constitutional magnitude was committed. He is not entitled to federal habeas corpus relief from his sentence of death imposed under Mississippi law.

Accordingly, it is ordered that the Petition for Writ of Habeas Corpus, be, and hereby is, denied. It is further ordered

---

13. While we specifically hold that this claim is barred from federal habeas review because the alleged error was not preserved, we further observe that *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) would present no meritorious basis for relief in this case. First, Petitioner's contention that there was no finding by the jury of an intent to take life is contrary to the record. The jury did find that the capital murder was "committed for the purpose of avoiding lawful arrest," and this finding is equivalent to a finding of intent. *Gray v. Lucas,* 685 F.2d 139, 140 (5th Cir.1982). Second, even without that finding, no *Enmund* claim would be present here, as it appears without contradiction that Petitioner himself in fact killed the victim during the robbery. *Cabana v. Bullock,* —— U.S. ——, —— n. 6, 106 S.Ct. 689, 700 n. 6, 88 L.Ed.2d 704, 720 n. 6 (1986).

that the stay of execution heretofore entered by this Court is vacated.  A separate judgment will be entered by the Court.