Steve Wilson **RIDLEY**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 44471.

Court of Criminal Appeals of Texas.

Jan. 18, 1972.

Rehearing Denied Feb. 23, 1972.

J. Charles Whitfield, Morris E. Belt, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Vic Driscoll, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for robbery by assault. The appellant, a Negro male, made an application for probation and pled guilty before a jury. After evidence was heard, the jury was instructed to find him guilty and to assess punishment at life or any term of years not less than five. They were further instructed on the law pertaining to probation. The jury assessed punishment at five years and did not recommend probation.

The evidence reflects that on or about August 23, 1970, appellant and another were together at a Mobil Service Station in Harris County. Appellant inquired about road service from both attendants claiming his car was stopped in the middle of the freeway. One attendant got suspicious and went to a nearby restaurant to ask that they call the police. The other attendant was himself calling the police on the service station telephone when appellant's companion pulled a gun on him. The appellant also pulled a gun but did not point it at the attendant because his companion stood between them. The companion told this attendant to give him everything out of the cash drawer and threatened to kill him if he did not have more money. While the attendant was opening the cigarette machine a police officer drove up. The officer placed appellant in handcuffs, told the attendant to watch him, and went after appellant's companion. The companion and the police officer exchanged gunfire prior to the officer's capturing him.

After the jury was selected and before any pleading, the appellant filed a motion to quash the jury panel asking for a "new shake" on the grounds that out of the

available jury panel of thirty-two, ten of whom were Negro, seven Negroes were stricken (none by the appellant) as a calculated policy by the prosecutor to systematically eliminate members of the Negro race from the jury. The motion was overruled.

After judgment was rendered, the appellant made a motion for a new trial on the same grounds as his motion to quash with the further allegation that the elimination of Negroes from the jury prevented his obtaining a full and fair consideration of his plea for probation. A hearing was held and the motion was denied.

At the hearing on the motion for a new trial it was stipulated that seven out of the ten persons struck by the State were members of the Negro race. John Cutler, a criminal defense lawyer for twenty-three years mostly in Harris County, testified that in his experience the prosecutors in Harris County had a tendency to strike members of the Negro race in jury selection. He further testified that in ten out of eleven cases of his in the past year the prosecutor used his ten peremptory strikes to eliminate prospective Negro jurors. In three of those cases there were more than ten Negroes on the venire so that the seated jury was not all white.

Erwin Ernst, assistant district attorney for Harris County for fifteen years, testified that the prosecutor's office had no policy, official or unofficial, of systematic exclusion or inclusion of any racial group from the jury panel by use of the peremptory challenge. He testified that it had been his practice and that of some of his associates to use the peremptory strike only after considering together the facts of the case and the prospective juror. On cross-examination he admitted that he considered use of the peremptory strike to eliminate prospective Negro jurors from the panel when the accused was black and the victim white a matter of common sense. He considered this the general rule with many exceptions in this type of case. This general rule, he testified, was in his opinion "to be

more assured that justice is perhaps bent toward the Crown."

M. W. Plummer, a practicing criminal lawyer for eighteen or nineteen years, testified that for the prosecutor to use seven out of ten strikes to eliminate members of the Negro race from the jury in a case where the accused was black and the victim white conformed with his experience. On cross-examination of Mr. Plummer the following occurred:

"Q. Do you feel in these cases you are talking about, where the prosecution uses its preemptory (sic) challenges to a large degree against Negroes, do you think it's done with an eye to all the facts and circumstances of a case and the parties involved, or do you think it's done in every case just because of their race without regard to the type of case or the parties involved?

"A. No, I couldn't make a general statement like that. They take into consideration all of the factors."

Weldon H. Berry, another practicing attorney in Harris County for eighteen or nineteen years engaged partly in criminal defense work, was asked on direct examination:

"Q. Based on your experience, if I gave you a hypothetical situation and told you that there was a black defendant and a white victim in an armed robbery situation involving shooting and that on the jury panel there were six or seven Negroes, would you expect all of them to be struck and not seated on that jury panel, from your experience?

"A. I would expect them to be struck.

"Q. And that has been your experience in observing the selection of juries in Harris County?

"A. Yes."

On cross-examination of the same witness the following took place:

"Q. In the same type of hypothetical situation, if the defendant on trial were a member of a certain lodge or 'association' and six or seven members of that same association were on the panel, would you also not expect that they would be challenged for cause?

"A. You mean—

"Q. Preemptory (sic) challenge?

"A. You mean, for instance, if the defendant was a member of the Mystic Knights of the Sea, and there were other members of this same fraternity organization on the panel?

"Q. Yes.

"A. I would expect them to be struck, yes."

Appellant contends his constitutional right of equal protection guaranteed by the Fourteenth Amendment was violated when the prosecutor used peremptory strikes to exclude all potential Negro jurors from the seated panel in a fashion consistent with the prosecutor's policy and practice over a period of time of so doing when there is, as in this case, a black accused and a white victim. He contends this to be the kind of "systematic exclusion" from petit juries described in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). There the complaint was that "in criminal cases prosecutors . . . consistently and systematically exercised their strikes to prevent *any and all Negroes* on petit jury venires from serving on the petit jury itself." 380 U.S. at 223, 85 S.Ct. at 837 (emphasis supplied). The Supreme Court rejected the complaint because the record did not show that such exclusion of Negroes was by State action except for the defendant's own case.

However, after tracing the history of peremptory strikes and saying that "[t]he presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury," the majority stated:

". . . If the State has not seen fit to leave a single Negro on *any jury* in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for *reasons wholly unrelated to the outcome of the particular case on trial* and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify." (Emphasis supplied) Id., at 224, 85 S.Ct. at 838.

While we are convinced that the appellant here, just as in Hardin v. State, 475 S.W.2d 254, and in Jaquez v. State, 473 S.W.2d 530, has failed by his evidence to show even what he claims to be systematic exclusion, we are also convinced that he has failed to allege systematic exclusion as that phrase is used in Swain. Swain viewed systematic exclusion as an all-encompassing effort to exclude all Negroes and "any identifiable group in the community which may be the subject of prejudice," from all petit juries "regardless of trial-related considerations." Appellant has not alleged that in Harris County there has been any effort to exclude all Negroes from petit juries. Further, where the accused is black and the victim white it is not unreasonable that race becomes a trial-related consideration. In Swain, the Supreme Court said it was the very nature of a peremptory strike to permit "rejection for a real or imagined partiality" which may be "frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the *race*, religion, nationality, occupation or affiliations of people summoned for jury duty." (emphasis supplied). Hence, where race (or any of the other "irrational

but trial-related suspicions and antagonisms") is a trial-related consideration in a particular trial and potential jurors are excluded from that trial jury by the State's use of the peremptory strike based on such consideration, equal protection has not been denied in that trial. Nor would the mere cumulation of trials utilizing the peremptory strike in this trial-related manner amount to "systematic exclusion" in the selection of petit juries as understood in Swain.

We hold that no systematic exclusion has been shown. To hold otherwise would in effect be abolishing our peremptory challenge practice which has always been a part of our system to help an accused as well as the State obtain an impartial jury and a fair trial.

The record contains no error. The judgment is affirmed.

ODOM, J., not participating.