**Larry SMITH, Petitioner,**

v.

**O.L. McCOTTER, Director, Texas Department of Corrections, Respondent.**

No. 86–1615.

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1986.

Washington & Randle, Craig A. Washington, Houston, Tex., for petitioner.

Jim Mattox, Atty. Gen., Paula C. Offenhauser, Asst. Atty. Gen., Austin, Tex., for respondent.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

PER CURIAM:

Petitioner Larry Smith's motion for a certificate of probable cause and a stay of execution is DENIED.

I.

Larry Smith was tried and convicted by a jury for intentionally causing the death of Michael Dean Mason. Mr. Mason, night manager of a Seven-Eleven store, died from a bullet wound suffered during a robbery at the store in the early morning hours of February 3, 1978.

On February 3, 1978, Fred Norris, then a high school student sixteen years old, was working with Mason at the Seven-Eleven store. Mr. Norris was sweeping the porch in front of the store when a man walked by, spoke to him, and entered the store. Norris has identified that man as Petitioner Larry Smith. Norris himself then went into the store, and at this time, a second man came in as well. Norris proceeded to the frozen food section. When he turned around, he saw Smith pull a cap down over his face so that it became a ski mask. Smith, holding a pistol in his hand, stood at the main register across from Mason. The cash drawer lay on the counter.

The second man circled around the counter and threw Mason to the floor, face down. Both the second man and Smith demanded Mason open the safe, but Mason explained he didn't have the keys. The second man withdrew from behind the counter, taking the cash drawer with him. Smith backed toward the front door to exit, but then stepped forward, leaned over the counter, and fired one shot at Mason, who was still lying face down on the floor. Mason died of a bullet wound to his left back.

At the guilt-innocence stage of the trial, the State presented Norris' testimony and other evidence. Smith offered no evidence. The jury returned a guilty verdict.

At the penalty stage of the trial, the State introduced evidence concerning Smith's reputation for peaceful and law-abiding conduct, which was characterized as poor, his prior convictions, an unadjudicated robbery, and a psychiatrist's testimony concerning Smith's future dangerousness. Smith produced a psychologist who testified that psychiatric testimony cannot predict future dangerousness. The jury returned affirmative answers to the special issues submitted pursuant to Tex.Crim. Proc.Code Ann. art. 37.071 (Vernon Supp. 1986). Accordingly, Smith was sentenced to death by lethal injection. On direct appeal, the Texas Court of Criminal Appeals affirmed the trial court's judgment. *Smith v. State,* 683 S.W.2d 393 (Tex.Ct.Crim. App.1984).

Smith's execution was originally scheduled to take place on August 13, 1985. On August 7, 1985, Smith applied to federal district court for both a writ of habeas corpus and a stay of execution. In his application for habeas relief, Smith asserted that the trial court had violated the principles of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and progeny, by sustaining the State's challenge for cause of veniremember Mark Robbe Eaker. He also asserted that the State, when cross-examining Smith's expert witness during the penalty stage of trial, had unconstitutionally adverted to Smith's decision to remain silent. On August 8, 1985, the federal district court issued an order staying Smith's execution. *Smith v. McCotter,* Action No. CA3–85–1520–F. On November 1, 1985, the federal district court referred Smith's application for habeas relief to a magistrate for a report and recommendation. The magistrate recommended that Smith's application be denied and that the stay of execution be vacated. On February 3, 1986, the federal district court, having adopted the recommendation, denied and dismissed Smith's habeas application and vacated the stay of execution. No appeal was taken from this judgment of the federal district court. Smith's execution was scheduled anew for May 21, 1986.

On May 13, 1986, Smith, relying upon *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applied to the state trial court for a stay of execution and habeas relief, asserting that the State had, through the use of peremptory challenges, unconstitutionally excluded prospective black jurors. On that same day, the state trial court denied the requested relief. On May 14, 1986, Smith again applied to federal district court for habeas relief and a stay of execution, raising the same ground he had raised in his state court habeas application. On May 19, 1986, the Texas Court of Criminal Appeals granted a stay of execution and ordered the state trial court to hear evidence on Smith's claim of unconstitutional juror selection. *Ex parte Smith,* Action No. 15,-987–01. In light of this order of the Texas Court of Criminal Appeals, the federal district court on May 19, 1986, denied Smith's request for a stay of execution as moot and his habeas application for failure to exhaust state law remedies. *Smith v. McCotter,* Action No. CA3–95–1520–F. On the following day, May 20, 1986, the Texas Court of Criminal Appeals, noting defects in Smith's habeas application before that court, withdrew its order for an evidentiary hearing and specified that Smith's execution would be stayed for a period of thirty days.

On May 30, 1986, Smith again sought habeas relief in the state trial court, asserting a *Batson* claim. Relief was denied on June 12, 1986. On July 2, 1986, the Texas Court of Criminal Appeals likewise denied habeas relief, citing *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), and noted that its May 20, 1986, stay of execution had lapsed by its own terms. *Ex parte Smith,* Action No. 15,-987–02.

On August 18, 1986, Smith sought another stay of execution from the Texas Court of Criminal Appeals. The stay was denied the following day. *Ex parte Smith,* Action No. 15,987–03. Petitioner Smith is presently scheduled to be executed on Friday, August 22, 1986.

## II.

Smith seeks in this Court a certificate of probable cause and an order staying the execution of his death sentence pending final disposition of a third petition for a writ of habeas corpus. Smith raises three grounds in his application. The district court has denied the relief sought. The matter is now before this Court.

### A.

■ First, Smith asserts that the rule of *Batson v. Kentucky*, ── U.S. ──, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), should be given retroactive effect in cases in which the death penalty has been assessed. In *Batson*, the Supreme Court reaffirmed the proposition that the "Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at ──, 106 S.Ct. at 1719. The *Batson* Court went on to describe how a defendant may establish a prima facie case showing violation by the prosecutor of this command of the equal protection clause:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Id.* at ──, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953); citations omitted). The Supreme Court indicated that its deci-

sion might constitute an overruling of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *Id.* at ──, 106 S.Ct. at 1725 n. 25.

Smith intimates in his application that he could make the required prima facie showing if *Batson* principles were applied retroactively to his case. Smith's argument is foreclosed by prior case law. In *Allen v. Hardy*, ── U.S. ──, ──, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986), a case not involving the death penalty, the Supreme Court stated that "*Batson* [had] overruled [a] portion of *Swain*, changing the standard for proving unconstitutional abuse of peremptory challenges." The Supreme Court held that the new standard announced in *Batson* for proving unconstitutional abuse should not be applied retroactively on collateral review of convictions that have become final before *Batson* was decided. *Id.* ── U.S. at ──, 106 S.Ct. at 2881. In *Esquivel v. McCotter*, 791 F.2d 350, 352 (5th Cir.1986), a case in which the death penalty had been assessed, this Court likewise concluded that "*Batson v. Kentucky* should be given prospective application only in federal habeas proceedings." Smith's first ground must therefore be rejected.

### B.

■ Smith also asserts that the state trial court erred in sustaining the State's challenge for cause of veniremember Mark Robbe Eaker. Finding the trial court's exclusion for cause "fairly supported by the record," we conclude that Smith has failed to make a substantial showing of the denial of a federal right with respect to the exclusion of Eaker.

In *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Supreme Court clarified the standard under which a prospective juror may be excluded for cause because of his views on capital punishment. Under *Witt*, a prospective juror may be excluded for cause when the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instruc-

tions and his oath." *Witt*, 469 U.S. at ——, 105 S.Ct. at 852. *Witt* further established that a state trial judge's determination that a prospective capital sentencing juror should be excluded for cause is a finding of fact presumed correct under 28 U.S.C. § 2254(d) unless one of the reasons enumerated in section 2254(d) is present. *Id.* at ——, 105 S.Ct. at 854–55. As in *Witt*, the appellant here "does not suggest that paragraphs 1 through 7 are applicable; he must therefore rest his case on the exception in paragraph 8—that the finding of bias is 'not fairly supported' by the record viewed 'as a whole.'" *Id.* at ——, 105 S.Ct. at 856.

Our careful review of the record reveals extensive testimony indicating that Eaker's views regarding capital punishment would have substantially impaired his performance of his duty as a juror. In response to a question by the prosecutor regarding Eaker's ability to cast a vote knowing it would result in imposition of the death penalty, the following colloquy occurred:

> Prosecutor: I realize that you're being honest with me, and I'm being honest with you in your feelings that you don't know whether you could or you couldn't. But now is the time, you see, when we have to get down to either saying, "yes, I could," or "no, I couldn't."
>
> Prospective Juror: The best I can do is to say I doubt if I could.
>
> Prosecutor: Doubt if you could.
>
> Prospective Juror: I doubt if I could do it.

Record Vol. VII at 1573. After being questioned regarding his ability to respond truthfully to each of the three questions required in Texas for imposing the death penalty, Eaker testified:

> I guess that the problem that I have, is that answering yes to all three of those questions, I still haven't answered the question in my mind whether or not someone should die or be condemned to life imprisonment.

Record Vol. VII at 1576. Eaker later testified that he would not necessarily respond affirmatively to the three questions, even if the State proved beyond a reasonable doubt that the answer to each question should be "yes." Record Vol. VII at 1592–93.

Eaker also testified at several points that he could not take the oath required of jurors by Texas law.[1] The following exchanges occurred regarding Eaker's ability to perform the duties required of a juror:

> Prosecutor: A person is qualified if he says that he will answer these questions, these three fact questions based upon the evidence, period.
>
> Prospective Juror: With a period then I couldn't take the oath.
>
> Prosecutor: Could not.

Record Vol. VII at 1586.

> The Court: Are you saying you would not take the oath as a juror?
>
> .      .      .      .
>
> Prospective Juror: In order not to break that oath under a set of circumstances in which the defendant was found guilty and evidence was provided that merited "yes" answer to all three of those votes, that a vote of "no" on my part recognizing that would be breaking the oath, then I could not take that oath because of the fact that I might find myself voting "no" anyway, and therefore breaking my oath.
>
> The Court: So you might vote "no" regardless of what the evidence was?
>
> Prospective Juror: Yes, sir.
>
> The Court: You might violate your oath?
>
> Prospective Juror: Yes, I would violate my oath. Yes, that is correct. I would violate the oath, and I don't want to be placed in a position of that.
>
> .      .      .      .

---

1. Texas law requires the following oath to be administered to jurors in criminal cases:

   You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render according to the law and the evidence, so help you God.

   Tex.Crim.Proc.Code Ann. § 35.22 (Vernon 1966).

The Court: I don't think it's necessary that you agree with the decision of other courts and jurors in other cases. You don't even have to agree with the other jurors, it's up to you. But I think the question, Dr. Eaker, is whether or not you would ignore the law, or violate your oath if you were taken on the jury.

Prospective Juror: Yes, I would. Under some circumstances.

The Court: I think that disqualifies him. Your feelings about the death penalty are so strong you would ignore the law or violate your oath in some way?

Prospective Juror: Yes, I would.

The Court: I excuse you.

Record Vol. VII at 1600–03. Based on the foregoing testimony and given the section 2254(d) presumption of correctness, we cannot conclude that the trial court erred in excluding Eaker for cause.[2]

### C.

 Finally, Smith argues that the method chosen to notify him of his August 22 execution date—a letter sent from the Texas District Court—"shocks the conscience" and so offends deeply rooted conceptions of fairness and justice as to violate the due process clause of the constitution. The Supreme Court, for example, has overturned a conviction resting on evidence obtained by bursting into the defendant's home without a warrant and forcing him to vomit two morphine capsules. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In the same opinion, however, Justice Frankfurter cautioned judges against allowing their "personal and private notions" to enlarge due process beyond its true function of defending our country's most fundamental values. *Id.* 342 U.S. at 170, 72 S.Ct. at 209.

The method of notifying Smith in this case of his execution date, however callous, does not rise to the level of a denial of fundamental fairness. Moreover, Smith has not alleged, and by the nature of his case, cannot allege, that this method caused him the substantial prejudice usually required for due process claims. *Keough v. Tate County Board of Education*, 748 F.2d 1077, 1083 (5th Cir.1984). Were this Court to stay Smith's execution on this basis alone, the state court could immediately hold a hearing to inform him in person of a new execution date. This Court declines to force the Texas District Court to carry out such a useless gesture.

### III.

Larry Smith's motion for a certificate of probable cause and a stay of execution is DENIED.

---

**2.** Because we conclude that Eaker was not erroneously excluded for cause, we need not address the State's argument that Smith is barred from raising the issue because he challenged Eaker's exclusion in a prior habeas corpus petition.