Connie Ray EVANS,
Petitioner-Appellant,

v.

Donald A. CABANA, Commissioner, Mississippi Department of Corrections,
Respondent-Appellee.

No. 87–4489.

United States Court of Appeals,
Fifth Circuit.

July 6, 1987.

Shirley Payne, Jackson, Miss., Stephen M. Latimer, East Brunswick, N.J., for Evans.

Edwin Lloyd Pittman, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Jackson, Miss., for Cabana.

Before GEE, RANDALL and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Connie Ray Evans seeks a stay of execution and a certificate of probable cause to appeal the district court's denial of his second petition for federal habeas corpus. Evans' execution is set for July 8, 1987. Evans raised two issues in his latest habeas petition: (1) that black jurors were impermissibly excluded from his petit jury in violation of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); and (2) that his trial counsel was constitutionally ineffective. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We agree with the district court that Evans has not made a substantial showing of the denial of a federal right; accordingly, we deny a stay of execution and deny the application for a certificate of probable cause.

## I.

The murder in this case occurred during an armed robbery of a neighborhood grocery store in Jackson, Mississippi. The evidence at trial revealed that Evans forced the grocery store clerk onto his knees and then shot him in the back of the head at close range.

Evans pleaded guilty to capital murder and his case proceeded directly to trial on the penalty phase as required by Mississippi's bifurcated scheme. The jury recommended the death penalty, finding that the State had proved four statutory aggravating circumstances that outweighed any mitigating circumstances.

Evans' death sentence was upheld on direct appeal, *Evans v. State*, 422 So.2d 737 (Miss.1982), and the Mississippi Supreme Court denied error coram nobis relief. *Evans v. State*, 441 So.2d 520 (Miss.1983). Evans' first petition for federal habeas corpus relief was denied by the district court, *Evans v. Thigpen*, 631 F.Supp. 274 (S.D. Miss.1986), and we affirmed. *Evans v. Thigpen*, 809 F.2d 239 (5th Cir.1987), *cert. denied*, —— U.S. ——, 107 S.Ct. 3278, 97 L.Ed.2d 782 (1987).

Evans contends that he intended to join the instant two claims with his first federal habeas petition, but was unable to do so before our decision was rendered in *Evans v. Thigpen*, 809 F.2d 239 (5th Cir.1987). Because of counsel's good faith efforts, the district court held that the failure to include these two issues in Evans' first petition for federal habeas corpus was not an abuse of the writ. The district court proceeded to find, however, that both issues were procedurally barred. We agree with the district court that Evans' *Swain* claim

is procedurally barred. We are also persuaded that no substantial *Swain* claim is presented on the merits. We express no opinion regarding the district court's findings on procedural default on the ineffective assistance of counsel claim; we agree with the district court that Evans does not present a substantial claim of ineffective assistance of counsel on the merits.

## II.

*Swain v. Alabama*

Evans contends that the district attorney who prosecuted his capital case, Ed Peters, systematically excludes blacks from juries in violation of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain*, a black man was tried and convicted of rape by an all white jury in Talladega County, Alabama. Although there were eight blacks on the venire, none served on the petit jury because two were exempt and six were excused by the prosecutor. *Id.* at 205, 85 S.Ct. at 827. At the time of the trial in *Swain*, no black had served on a petit jury in Talladega County for approximately thirteen years. *Id.*

In Part II of the opinion, *Swain* held that the prosecutor's use of peremptory challenges to exclude blacks in the defendant's case did not violate the Equal Protection Clause of the fourteenth amendment. *Id.* at 222–23, 85 S.Ct. at 837. The Court explained that:

In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we

think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence, the motion to strike the trial jury was properly denied in this case.

*Id.* at 222, 85 S.Ct. at 837.

In Part III of its opinion, *Swain* held that the defendant failed to prove that peremptory challenges were systematically used to prevent all blacks from serving on petit juries in Talladega County. The Court explained that:

[W]hen the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

*Id.* at 223–24, 85 S.Ct. at 837–38. The Court found that the evidence did not support "an inference that the prosecutor was bent on striking Negroes, regardless of trial-related considerations." *Id.* at 225–26, 85 S.Ct. at 839.

In the instant case, Evans pleaded guilty to capital murder and the sentencing phase of his trial was heard by a jury that includ-

ed eight whites and four blacks. The venire consisted of thirty-four potential jurors: twenty-one whites and thirteen blacks. The district attorney exercised ten or eleven of his twelve peremptory strikes [1] and excluded nine of the thirteen blacks from the venire. The district attorney therefore must have used either one or two of his peremptory challenges to exclude whites from the jury. Notably, the prosecutor had one or two peremptory challenges remaining after the jury was selected.

■ Evans' claim arises solely under *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Evans' conviction was final before the decision was announced in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* is therefore inapplicable because it does not have retroactive application, *Allen v. Hardy*, — U.S. —, 106 S.Ct. 2878, 92 L.Ed.2d 199, 204–06 (1986), even in death penalty cases. *Smith v. McCotter*, 798 F.2d 129, 132 (5th Cir.1986).

In order to prove a *Swain* violation, Evans relies on two items of evidence. First, Evans relies on district attorney Ed Peters' deposition in which Peters admits to a "philosophy" of peremptorily challenging as many blacks as he can. Second, Evans relies on statistics from the First Judicial District of Mississippi that reveal that blacks are much more likely to be the object of a peremptory challenge than are whites. The district court fully addressed these two pieces of evidence when it analyzed the "prejudice" prong of the procedural bar issue and concluded that this evidence did not establish a *Swain* violation. We agree with this conclusion of the district court.

Evans' claim must fail for an additional reason. Even if Peters' deposition and the statistics were sufficient to find that a *Swain* violation occurred in other cases, Evans' claim must fail because he has not proven that a *Swain* violation occurred in

his case. As a matter of law, it is insufficient to prove a *Swain* violation based solely on statistics from other cases and a philosophy which, according to undisputed facts in this case, did not continue "unabated" in the petitioner's trial.

In order to prevail in the instant case, Evans must prove that his prosecutor had

> a systematic *and intentional* practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in petitioner's trial.

*Willis v. Zant*, 720 F.2d 1212, 1220 (11th Cir.1983).

■ It is undisputed that four blacks were selected to be jurors at Evans' sentencing trial and participated in the unanimous death penalty recommendation. Considering that the venire consisted of twenty-one whites and thirteen blacks, it is significant that blacks were therefore represented on the petit jury in virtually the same proportion as they were represented on the venire.[2] It is also undisputed that Peters had at least one remaining peremptory challenge at the conclusion of the jury selection process. If Peters had intended to exclude as many blacks from the jury as possible, it would have made little sense to leave one peremptory challenge unused.

Thus, even if we accept Evans' argument that the Peters deposition and the statistics he proffered establish a *Swain* violation in past cases, he has not presented a substantial question of a *Swain* violation in his own case. The manner in which the prosecutor exercised his peremptory challenges in Evans' case and the composition of the jury that sentenced Evans negates the possibility that a *Swain* violation occurred in his case.

### III.

### Ineffective Assistance of Counsel

Evans argues that he was denied effective assistance of counsel because; (1) trial

---

1. The district court found that there was conflicting evidence in the record as to whether the district attorney used one or two of his peremptory challenges to strike whites from the venire.

2. Blacks constituted 38% of the venire and 33% of the petit jury.

counsel erred in advising Evans to plead guilty because counsel erroneously assumed that by pleading guilty Evans could exclude particularly damning evidence from the sentencing phase of the trial; (2) counsel failed to anticipate the Supreme Court's ruling in *Booth v. Maryland,* — U.S. ——, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and failed to take appropriate action to exclude the testimony of the victim's brother; (3) counsel failed to present available evidence in mitigation; and (4) counsel, by failing to object, allowed slides of the victim at the crime scene to remain on the projection screen for over fifteen minutes.

For the reasons that follow we reject these arguments on the merits.

## A.

Evans first argues that trial counsel's performance was deficient because counsel advised him to enter a guilty plea on the erroneous assumption that once guilt was admitted, much of the damning evidence about the crime itself could be excluded in the sentencing phase. Trial counsel confirms in an affidavit that he thought he would be successful in having some of the evidence related to the crime excluded in the sentencing phase of the trial if Evans pleaded guilty.

█ We are persuaded that it was not unreasonable for counsel to conclude that he might persuade the trial judge to limit the evidence directly bearing on commission of the robbery and murder if Evans entered a guilty plea. The trial court enjoys broad discretion in determining the admissibility of evidence and the amount of evidence the State is permitted to introduce on a point at issue. This is particularly true when the State's evidence becomes arguably cumulative. Counsel could have reasonably concluded that his chances of excluding arguably cumulative evidence of facts surrounding the robbery and murder would be improved if Evans pleaded guilty.

In assessing counsel's performance from counsel's perspective at the time his decisions were made, as *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984), directs us to do, it is important to note that the evidence of Evans' guilt was overwhelming. Evans made a detailed confession of his role in the crime and his accessory, Artis, entered a guilty plea and testified against Evans. Trial counsel was entitled to conclude that Evans had virtually no chance of obtaining a not guilty verdict and his best trial tactic was to plead guilty and present Evans to the jury as remorseful and penitent. As indicated above, a secondary benefit flowing to Evans from this tactic was an improved argument that at least cumulative evidence relating to the damning facts of the crime itself should be excluded.

We review counsel's strategy under the standard established in *Strickland.* The Court established two basic requirements for finding ineffective assistance of counsel.

'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense.'

*Id.* 466 U.S. at 687, 104 S.Ct. at 2064. The Court further explained that:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defend-

ant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ... There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689, 104 S.Ct. at 2065. (citations omitted).

Measured against the *Strickland* standard, we agree with the district court that counsel's strategic decision to advise his client to plead guilty was not deficient.

### B.

■ Evans next argues that trial counsel was ineffective because he failed to foresee the law as developed in *Booth v. Maryland,* — U.S. —, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). *Booth* was announced on June 15, 1987, and Evans' trial and sentencing occurred in 1981. At Evans' trial, counsel obviously recognized the prejudicial effect of the testimony of the victim's brother and objected to the testimony. The trial court overruled counsel's objections. Evans does not suggest what else his trial counsel could or should have done to exclude this evidence. This contention has no merit.

### C.

■ We agree with the district court that counsel's conduct was not deficient in failing to present additional mitigating evidence and in failing to object to the display of the crime scene for fifteen minutes. We adopt the opinion of the district court on these issues and append to this opinion the relevant portion of the district court opinion.

### CONCLUSION

In conclusion, because Evans has not made a substantial showing of the denial of a federal right, we DENY a certificate of probable cause and also DENY a stay of execution. See *Barefoot v. Estelle,* 463 U.S. 880, 883, 103 S.Ct. 3383, 3389, 77 L.Ed.2d 1090 (1983). The mandate shall issue forthwith.

### APPENDIX

Excerpts from opinion of United States District Court, Southern District of Mississippi, dated June 26, 1987, in Civil Action No. J–87–0081(B).

### IV.
* * *

#### (2) *Mitigating Evidence*

■ Petitioner contends that trial counsel failed to present a reasonably credible case in mitigation at the sentencing phase. As to the argument that counsel failed to call Evans' pastor, this Court held and the Fifth Circuit agreed that the trial court properly refused to allow another minister to testify merely on the Christian tenets of mercy. *See Evans,* 809 F.2d at 242; *Evans,* 631 F.Supp. at 285–86. For mitigating evidence, the Court looks to an individualized determination pertaining to the particular characteristics and background of the defendant and the particular circumstances of the crime. *Evans,* 631 F.Supp. at 286. The Petitioner has not indicated what the pastor's testimony would have been if introduced, and it is not shown how this would affect the outcome. Although the trial court could have allowed the testimony if it concerned Evans' individual background and character, *see Evans,* 631 F.Supp. at 286, there is no evidence that the pastor would have presented sufficient testimony to affect the outcome so that counsel's failure to put on this mitigating evidence was unreasonable or prejudiced the Petitioner.

■ Petitioner argues that trial counsel did not develop relevant mitigating evidence about Petitioner's character and history. He claims that counsel was ineffective in failing to follow up on a psychiatrist's report. A psychiatrist was not appointed to serve as an expert witness for the defense, but the Petitioner was taken to the Mississippi State Hospital at Whitfield for two examinations. The first report was cursory and uninformative.

Counsel was informed that the second report, which was not completed at the time of the plea hearing, revealed that Petitioner was sane to stand trial, but counsel did not check the report to discover Petitioner had a low intelligence quotient (IQ). There is no indication of what evidence of mental impairment a psychologist would have presented. Without any detailed facts, affidavits or other substantial proof, present habeas counsel merely states in the petition:

> In fact, the evidence that counsel failed to develop and present would have shown that Connie Ray Evans is a man of low intelligence, with psychological problems; that he was suffering from depression at the time of the murder; that he presented a good prospect for rehabilitation and very little evidence of future dangerousness. Because of counsel's failings, virtually none of this information was available to the sentencing jury.

The Court notes that the Petitioner was questioned thoroughly by the judge and attorneys during the guilty plea and during the trial as to his thought processes leading up to the crime. There was no indication of insanity, incompetence or substantial mental impairment at that time. Petitioner has not overcome the presumption that trial counsel made a tactical decision that there was no evidence of psychological problems or mental impairment worth presenting. The Court finds that this did not fall below a reasonable level for effective assistance of trial counsel.

■ Petitioner also claims that trial counsel only met with family members and potential character witnesses once and failed to call more witnesses in mitigation. There is no proffer or factual basis presented by Petitioner as to what other mitigating evidence was available. Petitioner does not now present evidence of witnesses who would have testified or the subject matter of any other witnesses' testimony, so this Court cannot conclude that counsel was not reasonable in failing to call more witnesses or present more mitigation evidence. *C.f. Porter v. Wainwright*, 805

F.2d 930, 933 (11th Cir.1986) (evidentiary hearing ordered where petitioner did proffer a number of exhibits in state and federal habeas proceedings as evidence of mitigating circumstances sentencing attorney could have presented), *cert. denied Dugger v. Porter*, —— U.S. ——, 107 S.Ct. 3196, 96 L.Ed.2d 682 (1987). Counsel has no absolute duty to present character evidence, *Mitchell v. Kemp*, 762 F.2d 886, 889 (11th Cir.1985), but in those cases where *no* mitigating evidence was presented, courts have found ineffective assistance of counsel. *See Tyler v. Kemp*, 755 F.2d 741, 743–46 (11th Cir.1985); *Pickens v. Lockhart*, 714 F.2d 1455, 1465 (8th Cir.1983). This Court declines to establish a checklist of required mitigating evidence. In the present case counsel did put on mitigating evidence that Petitioner cared for his mother, he worked and gave his mother most of his money to support her and his two younger sisters in a family of seven children, he was a good child, he got into trouble only by "running with bad boys," he had no previous violent crimes, he was remorseful and he had turned himself in to the police. This evidence was presented by Petitioner and Petitioner's mother, and counsel had tried to introduce the testimony of a minister. It is not unreasonable that trial counsel made a tactical decision not to bring in other potential character witnesses since counsel was aware they could also testify to prejudicial matters, such as Petitioner's prior juvenile record, which counsel was attempting to avoid. The decision not to seek more character or psychological evidence than was already admitted was within the range of professionally reasonable judgments. *See Strickland*, 466 U.S. at 699, 104 S.Ct. at 2070. Given the jury's finding of four aggravating factors, there is no reasonable probability that this suggested mitigating evidence would have changed the conclusion that the aggravating factors outweighed the mitigating circumstances. Petitioner has not established that counsel was ineffective.

### (3) *Slides*

■ Petitioner asserts that trial counsel was ineffective for failing to object to the

display of certain slides for 15 minutes during the cross-examination of Petitioner. The Court has previously ruled that these slides were properly admissible as evidence, *see Evans*, 809 F.2d at 242; *Evans*, 631 F.Supp. at 288, and the Petitioner now only addresses his argument to the length of time they were projected onto a screen during the cross-examination. The Court finds that the prosecutor did ask Petitioner questions regarding the position of the victim in the slide exhibits. [R. 397–405]. The trial record reflects that counsel had previously interjected several objections concerning the slides when they were first admitted, including that they were prejudicial; therefore, this Court cannot say that counsel's performance fell below a reasonable standard for failing to object to the amount of time for which the slides were displayed.