**Ex parte Charlie Joe HALIBURTON, Jr.**

No. 69850.

Court of Criminal Appeals of Texas, En Banc.

June 29, 1988.

Gary Udashen, Dallas, for appellant.

John Vance, Dist. Atty. and Leslie McFarlane, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Applicant filed this application for writ of habeas corpus pursuant to Article 11.07, Sec. 2, V.A.C.C.P., alleging his conviction was invalid because the Dallas County District Attorney's Office has a history of systematically excluding blacks from juries solely on the basis of race in violation of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).[1] On November 30, 1987, we remanded this cause to the trial court for appointment of an attorney for applicant and for an evidentiary hearing to determine whether applicant could produce evidence to support his claim under *Swain*, supra. The record of the evidentiary hearing is now before us; we will deny relief.

The trial judge filed supplemental findings of fact and conclusions of law in this cause. The trial court found that the State used only seven of its ten peremptory challenges in the jury selection process in applicant's trial in Cause # F80–1312–KQ[2] and that the prosecutor did not use any of these peremptory challenges to strike black persons from the jury panel. Thus, the trial judge concluded that the *Swain* holding was inapplicable to applicant's case and that applicant had not been denied any rights under the constitution of the United States or of Texas.[3] The trial judge also

1. On original submission of his application for writ of habeas corpus, applicant also challenged the validity of his conviction on the basis of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We denied relief since applicant's conviction became final prior to the time the *Batson* decision was issued. See *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

2. Applicant apparently had two other jury trials prior to the one in question, but he was not convicted in either trial. Consequently, the jury selection procedure in those two trials is not in issue.

3. The germane findings of fact were that the State only used seven of its ten possible peremptory challenges; that the seven peremptory challenges used by the State were to strike white venirepersons; that the State did not use any peremptory challenge to strike a black venireperson; and that transcription of the voir dire

concluded that applicant's application for writ of habeas corpus was totally without merit and recommended that it be denied.[4]

process was waived by applicant's appellate counsel.

The germane conclusions of law were that the *Swain* holding is inapplicable to the present cause as no peremptory challenges were used by the State to exclude blacks from the jury; that applicant was not denied any rights guaranteed to him the constitution of the United States or of Texas; and that applicant's application for writ of habeas corpus is totally without merit.

4. Although we do not find it necessary, for reasons indicated infra, to address the issue of whether applicant proved a history of systematic exclusion to dispose of his contention, a synopsis of the evidence introduced at the hearing aids in understanding applicant's claim. Applicant attempted to show a history of systematic exclusion of blacks from juries in Dallas County, the second requirement discussed in *Willis v. Zant*, 720 F.2d 1212 (11th Cir.1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 851 (1984), *aff'd sub nom.*, *Willis v. Kemp*, 838 F.2d 1510 (11th Cir.1988), by presenting testimony from several criminal defense lawyers and prosecutors who practice law in Dallas County to support his claim that the Dallas County district attorney's office has systematically excluded blacks from juries. The trial judge then concluded that *Swain, supra*, was inapplicable to applicant's case without expressly concluding that applicant failed to adequately show a history of systematic exclusion of blacks from juries in Dallas County.

Larry Mitchell, a board certified criminal law specialist and former judge, was the first witness called by applicant at the evidentiary hearing. Mitchell stated that, in his opinion which was based upon his experience in 150–200 felony jury trials, the Dallas County district attorney's office systematically excluded blacks through the use of peremptory challenges and that when blacks did serve on juries, it was extremely unusual and token representation. Mitchell stated that it was the practice of defense attorneys to strike blacks from the venire when the defendant was white. Mitchell had also seen the article written in 1973 by Jon Sparling, a former prosecutor in Dallas County, which dealt with jury selection in criminal cases. This article, which applicant relied upon heavily to prove a *Swain* violation, instructed prosecutors that "You are not looking for any member of a minority group.... Minority races almost always empathize with the Defendant." Mitchell stated that he saw this article in the prosecutor's manual around 1979–1981, that the article was republished several times and was eventually excised from the manual.

Fred Tinsley, a black lawyer who is also a board certified criminal law specialist and former judge, testified that the Sparling article reflects the policy of the Dallas County district attorney's office and that the prosecutors systematically excluded blacks from juries. According to Tinsley, approximately ninety percent of his law practice consists of representing black defendants in criminal cases. Tinsley stated that it was his experience that blacks are struck from juries when there is a black defendant and a white victim but not when both the defendant and victim are black. Tinsley testified that he had in the past struck blacks from jury panels, but he has never struck *all* blacks. Tinsley said that prosecutors, whose names he could not recall, told him that they struck blacks solely because of their race but that this practice was *not the policy* of the Dallas County district attorney's office.

Applicant next called Ron Goranson, a defense lawyer who specializes in criminal law, to testify. It was Goranson's opinion that prosecutors in Dallas systematically struck all blacks from jury panels but that this practice was an informal policy of the district attorney's office. Goranson believed that prosecutors could have struck blacks from jury panels for neutral reasons but that blacks were struck by the State because prosecutors believed blacks were unlikely to convict, and prosecutors want to win their cases. Goranson did not recall seeing a black juror in Dallas County until 1980, and he stated that he never struck blacks from jury panels because the State always struck the blacks for you.

James Jacks, a former assistant district attorney in Dallas County and, as noted earlier, one of the prosecutors in applicant's trial, testified that the Sparling article on jury selection was not given to him when he joined the district attorney's office. Jacks stated that it was not a policy of the district attorney's office to systematically exclude blacks from jury panels. Although applicant claims his trial attorney objected to the jury, Jacks did not recall any objections by applicant to the State's use of peremptory challenges at his trial.

Another former prosecutor from Dallas County, Ron Wells, reiterated that it was not a policy of the district attorney's office to strike blacks on the basis of race. Wells, however, was given the prosecutor's manual, of which the Sparling article was a part, when he joined the district attorney's office in 1980.

Richard Anderson, a criminal defense attorney since 1973 who is also board certified in criminal law, could not specifically recall having a black juror in any case where he represented a black defendant. Anderson believed that the district attorney's office had an unwritten policy of excluding blacks solely for racial reasons.

Peter Lesser, another criminal defense lawyer, stated that prosecutors, whose names he could not recall, readily acknowledged that it was a policy of the district attorney's office to use peremptory challenges to exclude blacks from juries. Lesser had a copy of the prosecu-

■ For applicant to sustain a claim of a *Swain* violation, he must prove the Dallas County District Attorney's Office purposefully discriminates against blacks in the jury selection process. The quantum of proof necessary to sustain this burden is a matter of federal law. *Swain*, 380 U.S. at 205, 855 S.Ct. at 827. In discussing this burden of proof, the Fifth Circuit adopted the standard enunciated in *Willis v. Zant*, 720 F.2d 1212 (11th Cir.1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 851 (1984), *aff'd sub nom.*, *Willis v. Kemp*, 838 F.2d 1510 (11th Cir.1988), wherein the court stated:

"In order to prevail in the instant case, [petitioner] must prove that his prosecutor had a systematic and intentional practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, *and that this practice continued unabated in petitioner's trial.*"

See *Evans v. Cabana*, 821 F.2d 1065 (5th Cir.1987), cert. denied, — U.S. ——, 108 S.Ct. 5, 97 L.Ed.2d 795 (emphasis added). Applicant, therefore, must satisfy what appears to be a two-part test: he must show not only that Dallas County prosecutors have a history of systematically excluding blacks from juries because of race, but also that this practice was employed in the selection of his jury.

■ The trial court's supplemental findings and conclusions contain a copy of the State's jury strike sheet from applicant's trial in this cause. The strike sheet shows that seven venirepersons were peremptorily challenged by the State, but there is nothing on the strike sheet which indicates the race of the persons struck or the reason for the strike. James Jacks, one of the prosecutors in applicant's trial, testified at the hearing on the writ that he did not specifically remember whether there were any blacks on the jury panel, but if there were, he did not strike any of them on the basis of race because such practice was not a policy of his or of the district attorney's office. Jacks stated that there were no notes in the district attorney's file on this case regarding racial considerations of the venirepersons in applicant's trial. Michael Byck, applicant's trial attorney in this cause, also testified at the hearing on the writ that he did not recall whether there were any blacks on the jury panel. The only evidence of the racial composition of

tor's manual which included the Sparling article, but he had gotten this manual about ten years ago. Lesser stated that the manual is given to prosecutors when they begin working for the district attorney's office and that the manual was being used by prosecutors at the time of applicant's trial.

Michael Byck, a criminal defense attorney also board certified in criminal law, represented applicant in his three jury trials. He believed that the Dallas County district attorney's office systematically excluded blacks from jury panels during 1979–1981, the time during which applicant was tried, and that that practice was employed by the prosecutors in applicant's trial. Byck's jury selection notes from applicant's first two trials, which are not in issue here, indicate that applicant was tried by an all-white jury in both trials, but Byck could not recall if any blacks were on the jury panel in applicant's third trial.

As stated earlier, applicant relied heavily upon the Sparling article to show that Dallas County prosecutors have a history of excluding blacks from jury panels solely on the basis of race. Sparling states in the introduction that the article contains "one prosecutor's ideas on some things that need to be said to the panel, and some things to look for in a juror." Spar-

ling's "ideas" included not selecting minorities as jurors because they have a tendency to sympathize with defendants, not selecting old women who wear too much make-up because they are usually unstable, and not selecting extremely overweight people, especially young men and women, because they lack self-discipline and are sometimes unstable. This article indicates that Sparling probably struck venirepersons on grounds irrelevant to legal proceedings, see *Swain*, 380 U.S. at 220, 85 S.Ct. at 835, but the article does not on its face indicate that Sparling's "ideas" were the policy of the Dallas County district attorney's office.

Applicant also relied heavily on an article printed in the Dallas Morning News in March of 1986. The article contained statistics on the jury selection process in 100 felony jury trials in Dallas County in 1983–1984. The authors of the article, Ed Timms and Steve McGonigle, found that of the black venirepersons that were struck peremptorily, ninety-two percent were struck by prosecutors. Other statistics showed that blacks were excluded from jury service almost five times the rate that whites were excluded, that four out of five black defendants have all-white juries, and that the chance that a black will serve on a jury is one in ten as opposed to a one in two chance for a white person.

the jury panel was applicant's testimony at the hearing that he thought there were two or three blacks on the jury panel in his third trial. Applicant initially stated that the prosecutor, Jacks, struck "some" of the black veniremembers, but he then concluded that the State struck all the blacks from the venire because there were no blacks on applicant's petit jury and his attorney did not strike any of them from the panel. Applicant testified further, however, that the investigator hired by his attorney for this hearing was checking the names of the members of the jury panel and was unable to find any blacks on the jury panel. Apparently, from applicant's testimony, the investigator had not been able to contact all of the venirepersons from applicant's third trial.

Although there is conflicting testimony as to the racial composition of the venire in applicant's third trial, the trial judge found that the State did not use its peremptory challenges to strike blacks from the jury panel. Absent an abuse of discretion, the findings of the trial judge will be upheld. We find that there is evidence in the record to support the trial judge's finding.

Since applicant has failed to establish that blacks were excluded from his jury panel solely because of their race, he has failed to meet his burden of proof. *Willis v. Zant,* supra; and *Ex parte Alexander,* 598 S.W.2d 308 (Tex.Cr.App.1980). Accordingly, we deny the relief sought.[5]

TEAGUE, J., concurs in the result.

DUNCAN, J., not participating.

ONION, Presiding Judge, concurring.

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court recognized that a State's purposeful or deliberate denial to Blacks on account of race of participation as a juror in the administration of justice violates the Equal Protection Clause. In order to prove such a violation, however, the Court required that the defendant prove the establishment of a *pattern* by which the prosecutor in numerous cases had peremptorily stricken veniremen of a particular race. *Id.* at 222–226, 85 S.Ct. at 837–839, 13 L.Ed.2d at 773–776. It was not enough to show just what was done in the defendant's own case.

In *Willis v. Zant,* 720 F.2d 1212 (11th Cir.1983), cert. den. 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 851 (1984), the Court, in ordering an evidentiary hearing on a *Swain* claim, noted that the petitioner at such hearing had to prove the prosecutor had a systematic and intentional practice of excluding blacks from petit juries in criminal cases through the exercise of peremptory challenges, "and that practice continued unabated in petitioner's trial. The exclusion must have occurred 'in case after case, whatever the circumstances, whatever the crime and whoever the defendant may be.' *Swain,* 380 U.S. at 223, 85 S.Ct. at 837." *Willis* was affirmed sub nom. *Willis v.*

**5.** The concurring opinion would hold that *Swain,* supra, is inapplicable to this cause because applicant failed to show that he made a timely objection at trial on the basis of *Swain,* supra. Specifically, the concurring opinion states that "today's majority opinion ignores the finding that no such trial objection was made." There are two reasons for which we did not address this issue of an objection at trial. First, the State filed a motion for rehearing in this cause after we remanded this cause to the trial court for a determination of whether applicant objected at trial on a *Swain* basis and for an evidentiary hearing to determine whether applicant could sustain his claim of a *Swain* violation. The State argued in its motion that: "Since Applicant cannot show an objection at trial, he cannot meet the first element of proof required by this court." Further, the court of appeals had resolved this issue against applicant in his appeal to that court after his conviction. We impliedly rejected the State's argument when we denied the motion. Second, we believe that the first person "systematically excluded" against, as per *Swain,* supra, is just as entitled to complain of systematic exclusion as is the last person systematically excluded against. In other words, if the systematic exclusion is not apparent at a particular defendant's trial, he should not be excluded from complaining of systematic exclusion by collateral attack when the systematic exclusion becomes apparent. Thus, we could not say prior to applicant's evidentiary hearing that he needed to object at trial in order to preserve *Swain* error. Having found a dispositive ground other than a procedural default, in the opinion above, we decline for the aforementioned reasons to address the procedural default issue.

*Kemp,* 838 F.2d 1510 (11th Cir.1988), where the Court adopted the above stated standard. See also *Evans v. Cabana,* 821 F.2d 1065 (5th Cir.1987), cert. den. — U.S. —, 108 S.Ct. 5, 97 L.Ed.2d 795.

And it has been held by this Court in the past that the mere alleged use of peremptory challenges to strike qualified blacks is not a prohibited systematic exclusion of blacks in the selection of petit jurors. See *Ridley v. State,* 475 S.W.2d 769, 772 (Tex. Cr.App.1972); *Evans v. State,* 622 S.W.2d 866, 868, 869 (Tex.Cr.App.1981); *McKay v. State,* 707 S.W.2d 23 (Tex.Cr.App.1985), cert. den. 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164.

Then along came *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), wherein the Supreme Court reaffirmed the principle announced in *Swain* but reexamined the evidentiary burden placed on a defendant who wishes to challenge the prosecution's use of peremptory challenges as racially discriminatory. In *Batson* the Supreme Court relaxed the evidentiary burden on a defendant by holding that a prima facie case of purposeful discrimination can be established solely by facts pertaining to the defendant's trial. *Id.* 106 S.Ct. at 1722–1724, 90 L.Ed.2d at 87–88.

It is to be observed that in *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the Court held that *Batson* was not available to defendants whose convictions were final at the time *Batson* was announced. Subsequently, however, in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court held that *Batson* was applicable to those defendants whose appeals were pending or not yet final by the time of the *Batson* decision.

These cases form the background for applicant's post-conviction application for writ of habeas corpus brought pursuant to Article 11.07, V.A.C.C.P.

The record before us reflects that applicant was convicted by a jury of aggravated robbery in 1980 in Cause No. F–80–1312–KQ in the 204th District Court of Dallas County. The court assessed punishment at 35 years' imprisonment after the State dismissed the paragraphs of the indictment alleging two prior convictions for enhancement of punishment.

Applicant appealed his conviction to this Court and the case was docketed as Cause No. 66,994. On September 1, 1981, the cause was transferred to the Fifth Court of Appeals in Dallas when that court and other Courts of Appeals acquired criminal jurisdiction. See Article V, § 6 (as amended 1980) and S.B. 265, Acts 1981, 65th Leg.

In his appeal one of applicant's points of error was that "constitutional rights to due process of law and the equal protection of the law were violated by the racially discriminatory actions of the State in peremptorily challenging all venirepersons of the Black Race and thereby subjecting appellant, a black person, to trial before an all white jury in a case involving an assault against a white woman."

In his appellate brief applicant stated that "By Bill of Exception and/or Motion to Supplement the Record of Trial, appellant shall establish the facts necessary to support this Ground of Error."[1]

Applicant's appellate brief also asserted that the jury panel in his case contained less than ten blacks and each were peremptorily challenged by the prosecutors in accordance with their official policy and custom when the accused is black and the victim is white. "In support of appellant's contention that such 'official policy' or 'custom' exists, appellant points out the fact that every such case involving the same prosecutors, such a policy and custom has been followed without exception." Applicant cited "*Swain v. Alabama,* 380 U.S. 202 [85 S.Ct. 824]," but did not cite any portion of the record supporting the assertions in his brief.

Applicant's counsel on appeal did submit an exhaustive brief on the *Swain* question

---

1. This applicant apparently did not do so on his appeal where he was represented by different counsel than at trial.

including most of the federal and state authorities outstanding at that time. His brief, however, never pointed out any trial objection on the basis of *Swain* nor did it call attention to just how the record was developed to support any *Swain* claim. The Court of Appeals rejected applicant's point of error on the basis that appellant had waived the transcription of the court reporter's notes of the voir dire examination of the jury, and the appellate record was not such as to permit the court to pass on the contention.[2] Applicant's other points (nee grounds) of error were disposed when his conviction was affirmed. *Haliburton v. State* (Tex.App.–Dallas 1982, No. 05–81–00318–CR) (unpublished opinion) (no PDR filed).

Applicant has now filed the instant and his third post-conviction application for writ of habeas corpus.[3] The main thrust of the instant habeas application is that there was *Batson* error at the time of his 1980 trial and he is entitled to relief. The judge of the convicting court clearly viewed the application as advancing only a *Batson* claim of error, and in his finding of fact and conclusions of law found that a *Batson* error claim was not entertainable on collateral attack after the conviction had become final citing *Griffin v. Kentucky*, supra. See also *Allen v. Hardy*, supra. In this the trial judge was correct even if a timely trial objection is made. See *Allen v. Hardy*, supra.

The habeas record was forwarded to this Court pursuant to the provisions of Article 11.07, supra.

Upon review of the record this Court entered a 5–4 order instructing the convicting court to conduct an evidentiary hearing. The Court agreed that a *Batson* error was not cognizable by collateral attack, but, directed the convicting court's attention to the possibility of a *Swain* error in the 1980 trial, although that case was not cited by the applicant. The order specifically directed the convicting trial court to determine in the evidentiary hearing whether an objection was made in applicant's 1980 trial for aggravated robbery. "In order for applicant to raise the *Swain* issue, he must have objected at trial pursuant to the grounds of *Swain*, and produce evidence that Dallas County has a history of systematically excluding blacks from juries through the use of peremptory challenges solely because of their race. Since such evidence may have developed subsequent to applicant's trial, we will remand this cause to the trial court for appointment of an attorney and an evidentiary hearing to determine whether applicant can produce evidence of the systematic exclusion of blacks from juries in Dallas County in violation of the holding in *Swain*, supra."[4]

After entry of the order the State filed a motion for rehearing pointing out that this Court had ordered an evidentiary hearing to resolve an issue raised and rejected on direct appeal. The State pointed out that if an issue has been addressed on direct appeal it need not be addressed again by way of a post-conviction habeas corpus proceeding, citing *Ex parte Acosta*, 672 S.W.2d 470 (Tex.Cr.App.1984). The motion was denied.

Following the evidentiary hearing the trial judge made supplemental findings of fact and conclusions of law. The judge found that applicant testified that his trial attorney made an objection towards the jurors by stating "... something to the nature as that I was the only black facing the court." While applicant's trial counsel was called as a witness he was not asked by anyone if he objected at the 1980 trial on the basis of the 1965 decision in *Swain*. Neither one of applicant's two appellate counsel who raised the *Swain* question on appeal were called to testify at the evidentiary hearing. With only applicant's testimony the trial judge found in his conclusions of law that "no legal objection raising

---

2. Even at this late date there seems to be no doubt about the waiver of the said transcription.

3. Applicant's other post-conviction applications for writ of habeas corpus did not involve a *Batson* or *Swain* claim.

4. See pp. 133–34 and 134 by the majority.

the 'Swain issue' was made at trial that encompassed the grounds of the *Swain* case."

The trial judge also found that at the 1980 trial the State used only seven of its ten peremptory challenges and these were used to strike white prospective jurors and none were exercised against blacks, and that on appeal applicant's counsel waived the transcription of the "voir dire process." The trial judge concluded that without a trial objection and without the use of any peremptory challenges against blacks in applicant's trial *Swain* was inapplicable and applicant was entitled to no relief. No finding was made as to the existence of any systematic and intentional practice of excluding blacks from jury service in Dallas County prior to applicant's 1980 trial or that such practice continued unabated during said trial. It is not clear whether the trial judge thought that *Swain* was inapplicable without the necessity of such a finding or that he concluded the evidence was insufficient to establish that the claimed exclusion in 1980 occurred "in case after case, whatever the circumstances, whatever the crime, and whoever the defendant may be." *Swain*, 380 U.S. at 223, 85 S.Ct. at 837.

Despite the fact that the order for an evidentiary hearing noted that it was necessary in order to raise the *Swain* issue that appellant objected at his 1980 trial on this basis, today's majority opinion ignores the finding that no such trial objection was made.

The majority simply concludes: "Since applicant has failed to establish that blacks were excluded from his jury panel solely because of his race, he has failed to meet his burden of proof. *Willis v. Zant*, supra...." This is not the standard set forth in *Willis v. Zant*, supra, and is more like some *Batson*-type standard which is not applicable to a *Swain* claim. *Swain* made clear that it was not enough to show what was done in the defendant's own case.

In my opinion *Swain* is not applicable because applicant did not sustain his burden in showing that he made a timely objection on the basis of *Swain*. But even if

he did make such an objection there was not sufficient evidence to sustain his burden of showing that prior to his 1980 trial that Dallas County prosecutors had a systematic and intentional practice "in case after case" of excluding blacks from juries in criminal cases by peremptory challenges and that such established practice continued unabated during applicant's trial.

While agreeing with the result reached by the majority opinion, I do not agree with all of its reasoning or the implications left by that opinion.

McCORMICK, J., joins this opinion.